# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1957

_____

Sean W. Mulvenon,                          *
                                           *
       Appellant,                  *
                                           *
                                           *   Appeal from the United States
   v.                                  *   District Court for the
                                           *   Western District of Arkansas.
Reed Greenwood, Individually;              *
Thomas E. Smith, Official Capacity as      *
Dean of the College of Education and       *
Health Professions,                        *
                                           *
       Appellees.                  *

_____

Submitted: January 12, 2011
Filed: June 10, 2011

_____

Before WOLLMAN, LOKEN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

    Sean Mulvenon sued Reed Greenwood, individually and in his official capacity as Dean of the College of Education and Health Professions of the University of Arkansas (COEHP),[1] alleging violations of procedural and substantive due process

---

[1]In March 2010, Tom Smith succeeded Greenwood as Dean of the COEHP and replaced Greenwood as the sole official-capacity defendant.

under the Fourteenth Amendment. The district court[2] dismissed Mulvenon's complaint with prejudice. Mulvenon contends that the court erred in concluding that he lacked a protected property interest in his claim that he possessed a legitimate expectation of continued employment as the holder of an endowed position in the COEHP. For the following reasons, we affirm.

## I. *Background*

In a letter dated August 16, 2004 ("Appointment Letter"), Greenwood offered Mulvenon a position as the holder of the George M. and Boyce W. Billingsley Chair for Educational Research and Policy Studies ("Billingsley Chair") in the COEHP's Department of Educational Leadership, Counseling, and Foundations. At that time, Mulvenon worked as a tenured faculty member in the COEHP. The Appointment Letter, attached to Mulvenon's complaint, indicated that Mulvenon's appointment would be "for a five-year period renewable on an annual basis beginning on August 16, 2004[,] and ending on May 10, 2009." The Appointment Letter further stated that at the conclusion of Mulvenon's service in the Billingsley Chair position, he would return to his tenured faculty position at his previous salary, "together with any annual merit increases earned . . . plus any other permanent state-funded adjustments." The Appointment Letter also "incorporated as part of the appointment to this position" an attached document entitled "*Guidelines for Annual and Fifth-Year Reviews of the George M. and Boyce W. Billingsley Chair for Educational Research and Policy Studies*" ("Reappointment Guidelines").

The Reappointment Guidelines, also attached to Mulvenon's complaint, detailed the process for reviewing Mulvenon's performance in the Billingsley Chair position on an annual basis and at the end of his five-year term. In the fifth year of his term, Mulvenon could indicate whether he was interested in seeking reappointment. If so,

---

[2]The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

Mulvenon would meet with the department head to discuss the upcoming five-year review. Thereafter, the department head would assemble "a review committee of faculty members external to the University of Arkansas," who would "review and evaluate the chair holder's performance and provide recommendations regarding reappointment to the chair."

To facilitate the external review committee's task of evaluating his performance, Mulvenon would prepare a statement describing his responsibilities, major accomplishments, and the effect of these accomplishments. Each member of the external review committee would prepare a letter assessing Mulvenon's performance in the Billingsley Chair position and "forward their letter[s] of review to the department head," who then had the option of interviewing each reviewer. Mulvenon would also receive a copy of these letters, and the department head would meet with Mulvenon to discuss the contents of the letters. The Reappointment Guidelines provided that "[t]he letters of review, and any written response to the letters by the chair holder, [would] be used to consult with the dean regarding reappointment."

Finally, the Reappointment Guidelines indicated that the department head and the dean of the COEHP, Greenwood, would make a final decision regarding reappointment:

> Reappointment or alternative decisions (e.g., reappointment for a shorter term, or no reappointment) shall be the decision of the department head on consultation with the dean and should be based on the letters of review from the external committee. The final decision on reappointment will be made by the Dean of the College of Education and Health Professions after reviewing all submitted written materials and consulting with the Head of the Department of Educational Leadership, Counseling and Foundations and the incumbent chair holder.

Mulvenon accepted his appointment to the Billingsley Chair position in a letter dated August 24, 2004.

As Mulvenon approached the end of his five-year term in 2009, he expressed his interest in seeking reappointment to the Billingsley Chair position. Thus, COEHP officials began the evaluation process described in the Reappointment Guidelines. At Mulvenon's request, the department head, Michael Daugherty, recused himself from the reappointment process.

Three external faculty members—Dr. Earl Cheek of Louisiana State University, Dr. William Rayens of the University of Kentucky, and Dr. David Shannon of Auburn University—reviewed Mulvenon's personal statement and submitted letters of review. Dr. Cheek and Dr. Shannon provided very positive evaluations of Mulvenon and recommended that he be reappointed. Dr. Rayens was somewhat ambivalent—expressing reservations with Mulvenon's research and teaching performance but noting that Mulvenon had improved the reputation of the university locally and nationally. Ultimately, Dr. Rayens neither recommended nor advised against Mulvenon's reappointment. Mulvenon submitted a letter responding to each of the three external reviewer's letters. Greenwood and Associate Dean John Murry met with Mulvenon on May 8, 2009.

In a letter dated May 10, 2009, Greenwood notified Mulvenon that he would not be reappointed for a new term in the Billingsley Chair position. In the letter, Greenwood indicated that he had "carefully considered the three external letters of review." He also stated that he was "familiar with [Mulvenon's] publications and [his] teaching record." Based on Greenwood's "professional academic judgment," he had determined that Mulvenon "[had] not fulfilled the scholarship and teaching expectations of the Billingsley Chair as set forth in the Guidelines for Reappointment." Greenwood then elaborated on Mulvenon's shortcomings in both

areas. Mulvenon returned to his prior tenured faculty position in the COEHP at the conclusion of his five-year term in the Billingsley Chair position.

Mulvenon filed suit in the district court against Greenwood, in his individual and official capacities, alleging violations of his rights to procedural and substantive due process for not reappointing him to the Billingsley Chair position. In response, Greenwood filed a motion to dismiss, contending that Mulvenon's complaint failed to establish any constitutionally protected property or liberty interests. The district court granted the motion to dismiss all of Mulvenon's claims. On the individual-capacity claims, the court concluded that Mulvenon's complaint failed to establish any constitutional violation because (1) he lacked a property interest in being reappointed to the Billingsley Chair position, and (2) his non-reappointment did not implicate any liberty interests. The court also dismissed Mulvenon's official-capacity claims because it concluded that his complaint had failed to allege facts sufficient to establish any constitutional violations.

## II. *Discussion*

On appeal, Mulvenon argues that he had a legitimate expectation of continued employment in the Billingsley Chair position and therefore had a property interest entitled to the protections of due process. According to Mulvenon, his legitimate expectation of reappointment stems from the Reappointment Guidelines, which state that the reappointment decision "should be based on the letters of review from the external committee." Mulvenon argues that under Arkansas law, this language means that the decision *must* be based on the letters. Because the letters from Dr. Cheek, Dr. Rayens, and Dr. Shannon were all favorable, Mulvenon contends that he "acquired a legitimate expectation of (continued) employment as the Billingsley Chair" when he received those letters. Mulvenon maintains that the Reappointment Guidelines did not allow Greenwood to substitute his judgment for that of the external review committee. Because Mulvenon's complaint shows that he had a property interest, Mulvenon

asserts that he alleged a violation of his constitutional right to due process, and the district court erred in dismissing his complaint.

In response, Greenwood retorts that the district court properly dismissed Mulvenon's claims because the complaint did not allege a violation of a constitutional right. Greenwood maintains that Mulvenon lacked a property interest in being reappointed to the Billingsley Chair position because he did not have a legitimate claim of entitlement to being reappointed. Greenwood contends that the plain language of the appointment letter and the Reappointment Guidelines vested him—the Dean of the COEHP—with the sole discretion to determine whether to reappoint Mulvenon. The external review letters were part of the reappointment process, but they were not binding on Greenwood and, therefore, could not create a legitimate claim of entitlement. Because "Mulvenon failed to allege facts stating a constitutional deprivation of any property or property interests," Greenwood asserts that Mulvenon necessarily failed to state a claim for a procedural or substantive due process violation.

We review de novo the district court's grant of a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, accepting the facts alleged in the complaint as true and granting all reasonable inferences in favor of the nonmoving party. *Stufflebeam v. Harris*, 521 F.3d 884, 886 (8th Cir. 2008). In addressing a motion to dismiss, "[t]he court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010) (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (noting that the same standard applies to a Rule 12(b)(6) motion to dismiss)).

As a preliminary matter, we note that Mulvenon only argues that he had a legitimate expectation of reappointment to the Billingsley Chair position. In other words, he only argues that he has a protected property interest and not a liberty interest. *See, e.g.*, *Winegar v. Des Moines Indep. Cmty. Sch. Dist.*, 20 F.3d 895, 899

(8th Cir. 1994) ("A person must have a legitimate claim of entitlement to his or her employment to have a property interest in it."). Mulvenon has not challenged the district court's conclusion that he lacked a protected liberty interest. *Cf. id.* ("An employee's liberty interests are implicated where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges."). Similarly, he has not challenged the district court's dismissal of his official-capacity claims. As a result, Mulvenon has waived these arguments. *See Fair v. Norris*, 480 F.3d 865, 869 (8th Cir. 2007) (finding that appellant "waived any arguments related to her other claims by failing to raise them in her opening brief").[3] Accordingly, we will only consider whether Mulvenon had a protected property interest to support his due process claims against Greenwood, in his individual capacity.

A. *Procedural Due Process Claim*

"To establish a violation of procedural due process, a plaintiff must show that he has been deprived of a constitutionally protected life, liberty or property interest." *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1114 (8th Cir. 2009). As noted *supra*, Mulvenon does not challenge the district court's conclusion that he lacked a constitutionally protected liberty interest. Thus, if Mulvenon lacks a constitutionally protected property interest in being reappointed, he cannot establish a due process violation. *See Forrester v. Bass*, 397 F.3d 1047, 1054 (8th Cir. 2005) ("Only if we find a protected interest do we examine whether the deprivation of the protected interest was done in accordance with due process."); *Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999) (en banc) (stating that "the possession of a protected life, liberty, or property interest is a condition precedent to any due process claim" (quotation, alterations, and citation omitted)).

---

[3]In his reply brief, Mulvenon concedes that he may have "grossly understated the issues on this appeal." He nonetheless contends—incorrectly—that the qualified-immunity and liberty-interest issues "were subsumed within" the issue of whether he had a legitimate claim of entitlement to reappointment.

"A person must have a legitimate claim of entitlement to his or her employment to have a property interest in it." *Winegar*, 20 F.3d at 899 (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Whether the employee had a legitimate claim of entitlement—and thus, a constitutionally protected property interest—depends on state law and the terms of his employment. *Kozisek v. Cnty. of Seward, Neb.*, 539 F.3d 930, 937 (8th Cir. 2008). However, a plaintiff's "subjective and 'unilateral expectation' that [he] had 'a legitimate claim of entitlement'" to continued employment in the same position is insufficient to create a property interest. *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 803 (8th Cir. 2004) (quoting *Roth*, 408 U.S. at 577).

Here, Mulvenon does not base his claim upon Arkansas contract law. Instead, he argues that the terms used in the Billingsley Chair extension process created a property interest under federal law, protected by federal due process, to reappointment to the position. We disagree. The Appointment Letter makes no mention of extending Mulvenon's employment as the holder of the Billingsley Chair beyond the initial five-year period. The letter indicates that his five-year term would be subject to evaluation and renewal *annually*, but it explicitly states that his term would end on May 10, 2009. Mulvenon would then return to his previous position as a tenured faculty member. The only mention of Mulvenon's possible reappointment appears in the Reappointment Guidelines, which describe a multi-step process for determining how Mulvenon would be evaluated for consideration of reappointment to the Billingsley Chair position, should he elect to seek reappointment.

Throughout this process, several individuals—the external review committee, the department head, and the dean—could exercise their discretion and judgment to evaluate whether Mulvenon should be reappointed. As we have recognized, "discretionary policies . . . do not bestow upon individuals protected property interests." *Habhab v. Hon*, 536 F.3d 963, 968 (8th Cir. 2008) (quotation, alterations, and citation omitted). At most, the terms of Mulvenon's employment provided a

*possibility* that he would be reappointed. This possibility, however, falls far short of creating a constitutionally protected property interest.

Nevertheless, Mulvenon contends that he acquired a property interest—a legitimate claim of entitlement to reappointment—at the moment the external reviewers gave him (mostly) positive evaluations. In effect, he attempts to fashion a property interest out of the reappointment process itself. We have previously held that the existence of procedures governing one's continued employment cannot, standing alone, create a property right to continued employment. *Stow v. Cochran*, 819 F.2d 864, 866–68 (8th Cir. 1987). Interestingly, the Tenth Circuit rejected an argument nearly identical to Mulvenon's in *Bunger v. University of Oklahoma Board of Regents*, 95 F.3d 987, 990–91 (10th Cir. 1996). There, two untenured professors argued "that the procedural guidelines in the Faculty Handbook effectively created a property interest in reappointment, of which they could be divested only according to the terms of the specified procedures." *Id.* at 990. The court explained the flaw in this argument as follows:

> This tautological argument fails because it attempts to construct a property interest out of procedural timber, an undertaking which the Supreme Court warned against in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985). "The categories of substance and procedure are distinct. . . . 'Property' cannot be defined by the procedures provided for its deprivation any more than can life or liberty." *Id.* at 541, 105 S. Ct. at 1493. The university's promise that it would follow certain procedural steps in considering the professors' reappointment did not beget a property interest in reappointment. *See Colburn v. Trustees of Indiana Univ.*, 973 F.2d 581, 589–90 (7th Cir. 1992) (holding that statements in handbooks and appointment contracts that untenured university faculty would be judged according to certain criteria and procedures did not create a property interest in reappointment).

*Id.* at 990–91. In short, Mulvenon cannot rely on the procedures governing his possible reappointment to create a property interest where none otherwise existed.

Because Mulvenon lacked a constitutionally protected interest, he cannot sustain his procedural due process claim. *See Forrester*, 397 F.3d at 1054. Thus, the district court correctly dismissed his claim.

### B. *Substantive Due Process Claim*

As with Mulvenon's procedural due process claim, "the possession of a protected life, liberty, or property interest is a condition precedent" to his substantive due process claim. *See Singleton*, 176 F.3d at 424 (quotation, alterations, and citation omitted). As explained *supra*, Mulvenon has not challenged the district court's conclusion that he lacked a constitutionally protected liberty interest, and he cannot show that he had a constitutionally protected property interest. Therefore, the district court correctly dismissed Mulvenon's substantive due process claim.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____