# United States Court of Appeals
## For the Eighth Circuit

_____

No. 10-3761

_____

Donald E. Stahl

*Plaintiff - Appellant*

v.

City of St. Louis, Missouri

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: December 13, 2011
Filed: August 6, 2012

_____

Before WOLLMAN, MELLOY, and COLLOTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Donald Stahl was arrested under the authority of St. Louis Ordinance § 17.16.270, which prohibits conduct, including speech, that has the consequence of impeding pedestrians or vehicular traffic. After the City dropped the charges against him, Stahl brought this action under 42 U.S.C. § 1983, as a facial challenge to the St. Louis ordinance. The district court granted the City's motion for summary judgment, finding the ordinance to be a content-neutral time, place, and manner restriction. We

reverse and hold that the ordinance is unconstitutional on its face because it does not provide fair notice of what conduct is prohibited and it excessively chills protected speech.

I

Donald Stahl is a member of an organization called the "9/11 Questions Group" in St. Louis, Missouri. This group espouses the belief that there exists photographic and other evidence to refute the official version of the events of September 11, 2001, and that this evidence is being hidden from the public. It is the mission of this group to disseminate its message to the largest audience possible through means such as signs, advertisements, leaflets, and the internet.

In accordance with this mission, Stahl and two other members of his group took signs to the Park Avenue Overpass in St. Louis, which is located over the merger of Interstates 44 and 55. They timed this public demonstration for a Friday at 6:00 am to coincide with the morning rush hour and allow their message to reach as many people as possible. During this demonstration, Stahl and one of his compatriots, William Demsar, held a sign on which was written: "911 was an inside job."

About an hour after the group began protesting, the St. Louis police received a call regarding an "offensive sign" on the highway overpass. Officer Fred Cox responded to this call and was the first to arrive at the scene of the protest. When he arrived, Officer Cox observed a moderate amount of traffic moving at a safe pace without any noticeable obstruction.

Nevertheless, Officer Cox approached Stahl and his group and told them to leave because they were obstructing traffic on Interstate 55. The group members argued with Officer Cox and refused to leave the overpass. In response, Officer Cox placed them in handcuffs and forcibly removed them from the overpass. Later,

Officer Cox testified that he believed the group's protest activities were particularly dangerous on that overpass because of a nearby highway exit and the interchanging nature of the roadway. He also stated that he believed the signs might have created a driving hazard, but that the message on the group's sign played no part in his decision to stop the protest. Shortly after Officer Cox placed Stahl and Demsar in handcuffs, another officer arrived on the scene and placed both Stahl and Demsar under arrest.

Upon their transport to a St. Louis police station, summonses were issued for the arrest of the two men for violation of § 17.16.270 of the Revised Code of St. Louis. This ordinance, which was enacted in 1979, states:

**17.16.270    Demonstration on or near street**

No person shall sell or offer for sale any goods or merchandise, display any sign or pictures, participate in or conduct an exhibition or demonstration, talk, sing or play music on any street or abutting premises, or alley in consequences of which there is such a gathering of persons or stopping of vehicles as to impede either pedestrians or vehicular traffic.

When Stahl later appeared in St. Louis municipal court to answer the summons, he was informed that the charge against him had been dismissed. Nevertheless, since the time of Stahl's arrest, he and the Questions Group have refrained from participating in demonstrations within the city of St. Louis for fear of arrest.

Following his arrest, Stahl brought this suit against the City of St. Louis, seeking a declaratory judgment that § 17.16.270 of the Revised Code is unconstitutional under the First and Fourteenth Amendments. The district court granted the City's motion for summary judgment, finding the ordinance a content

neutral and a valid time, place, and manner restriction. The court also found the ordinance was not overbroad or vague. This appeal followed.

II

We review the district court's grant of a motion for summary judgment de novo, "accepting the facts alleged in the complaint as true and granting all reasonable inferences in favor of the nonmoving party." Mulvenon v. Greenwood, 643 F.3d 653, 656 (8th Cir. 2011). In addressing a motion to dismiss, we may consider "the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." Id. at 656–57 (citation omitted).

A statute or ordinance violates the Due Process Clause if it fails to "give fair warning that the allegedly violative conduct was prohibited." Qwest Corp. v. Minnesota Pub. Util. Comm'n, 427 F.3d 1061, 1068 (8th Cir. 2005) (citation omitted); see also FCC v. Fox Television Stations, Inc., 132 S. Ct. 2307, 2317 (2012) ("A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required."). Such a law offends due process because it "may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits." City of Chicago v. Morales, 527 U.S. 41, 56 (1999) (plurality opinion) (citing Kolender v. Lawson, 461 U.S. 352, 357 (1983)).

In Morales, the Supreme Court held that a Chicago city ordinance offended the Constitution's Due Process Clause. The ordinance prohibited "loitering," which it defined as "remaining in one place 'with no apparent purpose.'" Morales, 527 U.S. at 53. The plurality noted that this definition of loitering did little to put citizens on notice as to what activity was and was not permissible under the ordinance:

It is difficult to imagine how any citizen of the city of Chicago standing in a public place with a group of people would know if he or she had an "apparent purpose." If she were talking to another person, would she have an apparent purpose? If she were frequently checking her watch and looking expectantly down the street, would she have an apparent purpose?

Id. at 56–57. The Court also noted that much of the conduct the ordinance criminalized was not only actually innocent, but was also protected "as 'an attribute of personal liberty' . . . by the Constitution." Id. at 53 (quoting Williams v Fears, 179 U.S. 270, 274 (1900)). "Indeed, it is apparent that an individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is 'a part of our heritage.'" Morales, 527 U.S. at 54 (quoting Kent v. Dulles, 357 U.S. 116, 126 (1958)).

The ordinance here concerns road safety, an area in which municipalities traditionally have power to regulate. See Frye v. Kansas City Mo. Police Dep't, 375 F.3d 785, 791 (8th Cir. 2004).[1] This power extends to allow municipalities to prevent potential traffic obstructions before they actually cause an accident or other problem. Id. at 791 ("The fact that an accident had not occurred is irrelevant. The police

---

[1] Though this case is factually similar to Frye, our holding in that case that the police officer's conduct was content neutral and not unconstitutional under the First Amendment is consistent with our holding here. In Frye, the challenge was to a police officer's conduct in a particular situation, not to the ordinance under which the police officer acted. Frye, 375 F.3d at 790. The parties did not bring a constitutional challenge to the ordinance in that case, and we did not discuss the matter in the opinion. Instead we held more narrowly that the police officer's action of arresting protesters after they refused to relocate or stop displaying posters that were actually disrupting traffic in Kansas City, Missouri, was content neutral. Id. ("[T]he police officers did not impose restrictions based on the content of appellants' message. . . . Rather, the police officers placed reasonable restrictions on the location of the signs in order to protect public safety.").

officers were entitled to decide that the situation presented a danger before an accident occurred."); <u>ACORN v. St. Louis Cnty.</u>, 930 F.2d 591, 596 (8th Cir. 1991) ("The fact that there was no evidence of ACORN's solicitors being hurt is of no probative value. The government need not wait for accidents to justify safety regulations."). So long as the ordinance is clear and provides fair notice as to what conduct is deemed likely to cause a traffic problem, these regulations do not offend due process.

The St. Louis ordinance does not meet this test. Rather, it offends the Due Process Clause because it fails to provide fair notice of what is forbidden. We note that the ordinance is not vague in the traditional sense that its language is ambiguous: the language is fairly clear that speech and activities that actually cause a pedestrian or traffic obstruction are prohibited. Rather, the problem is that the ordinance does not provide people with fair notice of when their actions are likely to become unlawful. <u>See</u> <u>Fox Television Stations</u>, 132 S. Ct. at 2317 (noting that one concern of the void for vagueness doctrine is "that regulated parties should know what is required of them so they may act accordingly"). The ordinance criminalizes speech if it has the consequence of obstructing traffic, but the speaker does not know if his or her speech is criminal until after such an obstruction occurs. Though there are certainly times when a speaker knows or should know that certain speech or activities likely will cause a traffic problem, in many situations such an effect is difficult or impossible to predict.

This due process and fair notice infirmity is further demonstrated by the ordinance's lack of a mens rea requirement—violation of the ordinance does not hinge on the state of mind of the potential violator, but the reaction of third parties. <u>See</u> Morales, 527 U.S. at 55 (holding a vague law with no mens rea requirement that infringes on a constitutional right "is subject to facial attack."); <u>cf.</u> <u>Colten v. Kentucky</u>, 407 U.S. 104, 110 (1972) (a state statute criminalizing congregation in public and refusal to disperse *with the intent* to cause public inconvenience was not

unconstitutional because "[a]ny person who stands in a group of persons along a highway where the police are investigating a traffic violation and seeks to engage the attention of an officer issuing a summons should understand" that conduct to be criminalized by the statute at issue).

The fact that a person only violates the ordinance if his or her action evokes a particular response from a third party is especially problematic because of the ordinance's resulting chilling effect on core First Amendment speech. A law's failure to provide fair notice of what constitutes a violation is a special concern where laws "abut[] upon sensitive areas of basic First Amendment freedoms" because it "inhibit[s] the exercise" of freedom of expression and "inevitably lead[s] citizens to steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked." Grayned v. City of Rockford, 408 U.S. 104, 109 (1972) (citations and internal quotation marks omitted); see also Fox Television Stations, 132 S. Ct. at 2317 ("When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech.") Speech is an activity particularly susceptible to being chilled, and regulations that do not provide citizens with fair notice of what constitutes a violation disproportionately hurt those who espouse unpopular or controversial beliefs. See NAACP v. Button, 371 U.S. 415, 433 (1963) ("These freedoms are delicate and vulnerable, as well as supremely precious in our society. . . . Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity.").

The ordinance criminalizes activity based primarily on often unpredictable reactions of third parties rather than directly on a person's own actions, and it excessively chills protected First Amendment activity. We therefore find it to be in violation of the Due Process Clause and unconstitutional. Accordingly, the judgment of the district court is reversed.

———————————————