# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2012
_____

Ronald Duhe, et al.

*Plaintiffs - Appellants*

v.

City of Little Rock, Arkansas, et al.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: April 12, 2018
Filed: September 5, 2018

_____

Before SMITH, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

Ronald Duhe and Mark Holick were arrested for disorderly conduct during an anti-abortion demonstration at the Little Rock Family Planning Services Clinic ("the Clinic") in Little Rock, Arkansas. Little Rock police took Duhe and Holick to the Pulaski County Regional Detention Facility ("the Jail"), where they were processed and released the same day. After a bench trial in state court, the disorderly conduct charges were dismissed. Duhe, Holick, and Spirit One Christian Ministries, Inc.

("Spirit One"), a nonprofit corporation founded by Holick as a church in 1991, brought this § 1983 suit against the City of Little Rock, Little Rock Police Lieutenant Sidney Allen, and Pulaski County. Plaintiffs allege that the arrests were without probable cause and violated the First Amendment; the Arkansas disorderly conduct statute, Ark. Code Ann. § 5-71-207(a), and a Little Rock permit ordinance, Little Rock Rev. Code § 32-551, are unconstitutional on their face and as applied; and the County unconstitutionally detained Duhe and Holick at the Jail. The district court[1] granted summary judgment dismissing all claims on the merits and granting Allen qualified immunity from individual-capacity damage claims. Plaintiffs appeal. Reviewing the grant of summary judgment *de novo*, we affirm.

## I. Fourth Amendment Arrest Claims.

Qualified immunity shields government agents from personal liability for civil damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "The entitlement is an *immunity from suit* rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis in original). Accordingly, it is appropriate to begin with the one claim in which plaintiffs seek damages from a government agent acting in his individual capacity, the claim that Lt. Allen violated Duhe and Holick's First and Fourth Amendment rights when he arrested them at the Clinic for violating the Arkansas disorderly conduct statute.

Duhe and Holick assert that Allen violated their Fourth Amendment rights because he lacked probable cause to arrest. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his

---

[1]The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas.

presence, he may, without violating the Fourth Amendment, arrest the offender." Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001). "[A]n officer is entitled to qualified immunity if there is at least arguable probable cause" to arrest. Gilmore v. City of Minneapolis, 837 F.3d 827, 832 (8th Cir. 2016) (quotation omitted).

In reviewing the grant of summary judgment, we view the facts in the light most favorable to Duhe and Holick, the non-moving parties. In September 2012, Holick organized a multi-day outreach in Little Rock, which involved demonstrations against abortion in front of a Little Rock high school and the Clinic. In anticipation, the Little Rock Police Department implemented an Operational Order that placed Lt. Allen in charge of a Special Response Unit to monitor the demonstrations.

On the first day, September 13, Holick and a group demonstrated at the high school and in front of the Clinic without incident. Early in the morning of September 14, a small number of demonstrators met in front of the Clinic. Duhe, arriving in Little Rock several hours earlier, joined the group. During the demonstration, both Duhe and Holick spoke through a microphone with an amplifier. Lt. Allen testified that he arrived at the Clinic after receiving a radio call from Special Response Unit member Ronald Morgan. According to Allen, Morgan advised that police on the scene received complaints about noise and that demonstrators were obstructing traffic at the Clinic.

One of the complainants was Gayle Teague, an employee of a vision center located near the Clinic. Teague testified that she could hear the demonstration in her clinic and told officers the noise was disrupting her business. She noted that protests were common in front of the Clinic, but this was the only time she could recall hearing sound from a demonstration in her office. Lori Williams, the Clinic's Clinical Director, complained to officers the sound was too loud for the Clinic to function. She testified that she could hear sound from the demonstration in a private counseling room while she was attempting to speak with a patient. She said that some patients

canceled appointments in response to the demonstration, and that she saw demonstrators blocking the Clinic's driveway.

Allen averred that as he approached the site of the protest, he could hear someone speaking on an amplifier from about a city block away. On the scene, an officer told Allen that Holick had been blocking the driveway. Allen saw Duhe and Holick speaking through the amplifier and saw Holick walking slowly across the driveway, stopping vehicles. Allen testified that he directed officers to arrest Duhe and Holick for disorderly conduct for their use of the microphone and for Holick's obstruction of traffic.

"Probable cause exists when the totality of circumstances demonstrates that a prudent person would believe that the arrestee has committed or was committing a crime." Kuehl v. Burtis, 173 F.3d 646, 650 (8th Cir. 1999). Probable cause is a "fluid concept." Illinois v. Gates, 462 U.S. 213, 232 (1983). "The arresting officer himself need not possess all of the available information"; probable cause is assessed by the collective knowledge of the relevant officers and available objective facts. United States v. Stratton, 453 F.2d 36, 37 (8th Cir.), cert. denied, 405 U.S. 1069 (1972). Whether probable cause existed at the time of the arrest is a question of law for the court. Fisher v. Wal-Mart Stores, Inc., 619 F.3d 811, 816 (8th Cir. 2010).

As relevant here, the Arkansas disorderly conduct statute provides:

(a) A person commits the offense of disorderly conduct if, with the purpose to cause public inconvenience, annoyance, or alarm or recklessly creating a risk of public inconvenience, annoyance, or alarm, he or she:

\* \* \* \* \*

(2) Makes unreasonable or excessive noise . . . [or]

(5) Obstructs vehicular or pedestrian traffic . . . .

Ark. Code Ann. § 5-71-207(a)(2), (5). The Code provides that a person acts purposely "when it is the person's conscious object to engage in conduct of that nature or to cause the result." § 5-2-202(1). A person acts recklessly "when [he] consciously disregards a substantial and unjustifiable risk that . . . [a] result will occur," when disregarding the risk "constitutes a gross deviation from the standard of care that a reasonable person would observe in the actor's situation." § 5-2-202(3).

We agree with the district court that Lt. Allen had probable cause to arrest Duhe and Holick for violating the Arkansas disorderly conduct statute. He personally heard the amplified noise from a considerable distance and witnessed Holick obstructing traffic entering the Clinic's driveway. He was entitled to rely on the statements of Teague and Williams to other officers that the noise was disrupting their business activities and demonstrators were obstructing traffic. That Duhe and Holick's disorderly conduct charges were subsequently dismissed is irrelevant to the probable cause inquiry. Joseph v. Allen, 712 F.3d 1222, 1226 (8th Cir. 2013).

Duhe and Holick argue that Allen lacked probable cause because he did not conduct a reasonably thorough investigation before ordering the arrest, and he did not take a decibel reading or check the sound volume inside the Clinic or the vision center. They argue investigation would have revealed that demonstrators at the scene did not believe traffic was obstructed, the noise was excessive, or that Duhe and Holick intended to create public inconvenience, annoyance, or alarm. Absent exigent circumstances, officers "have a duty to conduct a reasonably thorough investigation prior to arresting a suspect." Kuehl, 173 F.3d at 650. But they need not conduct a "mini-trial" prior to making an arrest. Gibson v. Cook, 764 F.3d 810, 814 (8th Cir. 2014). We conclude Allen conducted a reasonable investigation. He did not disregard "plainly exculpatory evidence," and given what he personally observed and was told, "minimal further investigation" such as interviewing Duhe and Holick's fellow protesters would not have exonerated them. Kuehl, 173 F.3d at 650-51.

Lt. Allen did not violate the Fourth Amendment because he had probable cause to arrest Duhe and Holick for violating the disorderly conduct statute in his presence. This conclusion forecloses plaintiffs' Fourth Amendment claims of municipal or supervisor liability against the City of Little Rock. See Brossart v. Janke, 859 F.3d 616, 627-28 (8th Cir. 2017), cert. denied, 138 S. Ct. 2025 (2018).[2] In addition, Lt. Allen is clearly entitled to qualified immunity. As the Supreme Court of Arkansas has enforced the disorderly conduct statute consistent with its plain meaning, see Johnson v. State, 37 S.W.3d 191, 195 (Ark. 2001), Allen had probable cause to believe Duhe and Holick were violating a valid Arkansas statute and therefore did not violate their clearly established Fourth Amendment rights. See Reichle v. Howards, 566 U.S. 658, 664 (2012).

## II. Arkansas Disorderly Conduct Statute Claims.

The plaintiffs appeal the denial of their request for declaratory relief in the form of an order invalidating the Arkansas disorderly conduct statute, which they claim is vague on its face and as applied and is overbroad. We agree with the district court that Duhe and Holick have standing to challenge the statute -- they were arrested for

---

[2]Duhe and Holick also argue they are entitled to damages because defendants violated their First Amendment rights in arresting them for violating an unconstitutional disorderly conduct statute. Whether municipal defendants may be liable under § 1983 for enforcing a state criminal statute is a thorny issue. See Slaven v. Engstrom, 710 F.3d 772, 781 n.4 (8th Cir. 2013). As we conclude in the next part of this opinion that the statute is not unconstitutional, we need not take up this issue. The district court properly dismissed the First Amendment arrest claims. There is not a scintilla of evidence that the plaintiffs were arrested because of the content of their speech, rather than the manner in which they demonstrated. See R.A.V. v. City of St. Paul, 505 U.S. 377, 382 (1992).

violating it and claim their First Amendment rights are chilled by the possibility they will be arrested again.[3]

**A. Vagueness.** A state statute is unconstitutionally vague if it "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or it "encourages arbitrary and discriminatory enforcement." Hill v. Colorado, 530 U.S. 703, 732 (2000). "Condemned to the use of words, we can never expect mathematical certainty from our language," even in the context of the First Amendment's protection of freedom of speech, where vagueness concerns are especially pressing. Grayned v. City of Rockford, 408 U.S. 104, 109-110 (1972). Nor is a criminal statute vague solely because close cases may exist under its requirements. That problem is addressed by requiring proof of a specific violation beyond a reasonable doubt, not by invalidating the statute for facial vagueness. "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." United States v. Williams, 553 U.S. 285, 306 (2008).

The plaintiffs argue the terms "inconvenience, annoyance and alarm" fail to provide a person of ordinary intelligence with notice of what § 5-71-207 forbids and permit arbitrary and discriminatory enforcement. They rely on Stahl v. City of St. Louis, 687 F.3d 1038, 1039 (8th Cir. 2012), where we invalidated an ordinance prohibiting displaying signs or demonstrating on or near a street that resulted in "such a gathering of persons or stopping of vehicles as to impede either pedestrians or vehicular traffic." We concluded the ordinance was "not vague in the traditional sense that its language [was] ambiguous." Rather, because it lacked a *mens rea* requirement,

---

[3]In their opening brief, the plaintiffs do not address the district court's determination that Spirit One lacked standing to challenge the Arkansas disorderly conduct statute. We therefore dismiss its claim for lack of jurisdiction. See Disability Support Alliance v. Heartwood Enters., 885 F.3d 543, 545 (8th Cir. 2018).

violation relied on the reactions of third parties, which did not provide people "fair notice of when their actions are likely to become unlawful." Id. at 1041. Similarly, in Coates v. City of Cincinnatti, 402 U.S. 611 (1971), the Supreme Court invalidated an ordinance prohibiting three or more people assembling on a sidewalk and "conduct[ing] themselves in a manner annoying to persons passing by." The ordinance did not give fair notice of the conduct it prohibited because "[c]onduct that annoys some people does not annoy others." Id. at 614.

We agree with the district court that the Arkansas disorderly conduct statute is not impermissibly vague like the ordinances at issue in Coates and Stahl, primarily because it contains a *mens rea* requirement using terms specifically defined in § 5-2-202 of the Arkansas Criminal Code. Thus, a disorderly conduct conviction cannot be based solely on the reactions of third parties; the offender must intend to cause public inconvenience, annoyance, or alarm by obstructing traffic or making unreasonable or excessive noise, or must recklessly disregard the risk of doing so. As the district court noted, this requirement allows potential violators to "predict whether a future course of conduct will violate the statute."

The plaintiffs also argue the phrases "unreasonable or excessive noise" and "obstructs pedestrian or vehicular traffic" are unconstitutionally vague. We disagree. "Obstructing" and "unreasonably" are widely understood restrictions that "require no guess[ing] at [their] meaning." Cameron v. Johnson, 390 U.S. 611, 616 (1968); see Reeves v. McConn, 631 F.2d 377, 385-86 (5th Cir. 1980) ("unreasonably loud" not void for vagueness). Thus, like the ordinance in Stahl, the conduct proscribed by the statute is sufficiently clear. The prohibitions are not standardless and provide sufficient "minimal guidelines to govern law enforcement." Powell v. Ryan, 855 F.3d 899, 903 (8th Cir. 2017), quoting Smith v. Goguen, 415 U.S. 566, 574 (1974). "As always, enforcement requires the exercise of some degree of police judgment." Grayned, 408 U.S. at 114. The statute is not unconstitutionally vague, either on its face or as applied to the plaintiffs' conduct.

**B. Overbreadth.**  Though facial challenges are disfavored, the overbreadth doctrine allows a facial challenges to a statute that restricts free speech because it may be applied unconstitutionally to parties not before the court.  See Excalibur Grp., Inc. v. City of Minneapolis, 116 F.3d 1216, 1223 (8th Cir. 1997), cert. denied, 522 U.S. 1077 (1998).  The rationale is that overbroad statutes may chill protected speech. Bates v. State Bar of Ariz., 433 U.S. 350, 380 (1977).  But invalidating a law for overbreadth is "strong medicine"; the doctrine should be employed "sparingly and only as a last resort."  Broadrick v. Oklahoma, 413 U.S. 601, 613 (1973).  The disorderly conduct statute is only invalid if it is substantially overbroad relative to its "plainly legitimate sweep."  Id. at 615.

The disorderly conduct statute is a content-neutral time, place, or manner restriction because it is "justified without reference to the content of the regulated speech."  Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293 (1984). Consequently, the statute is valid if it is "narrowly tailored" to achieve a "significant governmental interest" and permits "ample alternative channels for communication." Phelps-Roper v. City of Manchester, 697 F.3d 678, 686 (8th Cir. 2012) (en banc) (quotation omitted).  It need not be the least restrictive means of serving the government's interest; rather, it is sufficiently tailored if "a substantial government interest . . . would be achieved less effectively absent the regulation."  Ward v. Rock Against Racism, 491 U.S. 781, 798-99 (1989) (quotation omitted).

The plaintiffs do not contest that the disorderly conduct statute serves a significant government interest.  The government has a substantial interest in preventing excessive noise -- including in public fora -- and in ensuring the free and orderly flow of traffic on streets and sidewalks.  See Grayned, 408 U.S. at 116 (noise); Ward, 491 U.S. at 796 (same); McCullen v. Coakley, 134 S. Ct. 2518, 2535 (2014) (traffic).  The statute directly serves the state interest in limiting noise and traffic obstructions by prohibiting intentional or reckless speaking or demonstrating in a manner that creates those obstructions.  The statute is sufficiently narrowly tailored

-9-

and leaves open alternative channels of communication. As the district court observed, "[s]peakers can reasonably convey their message -- any message -- as long as they do not purposefully or recklessly create unreasonable or excessive noise or obstruct vehicular or pedestrian traffic."

The plaintiffs contend the statute is nonetheless overbroad because it criminalizes noises such as "horns, mufflers, [stadium] crowds . . . [and] people simply speaking in public." However, as discussed, the statute's *mens rea* element limits the prohibition to speakers who intentionally or recklessly use horns, mufflers, or amplifiers "to cause public inconvenience, annoyance, or alarm." This is an objective prohibition that does not turn on the subjective opinions of the speaker's audience. Though the Legislature might have adopted other objective criteria such as decibel limits, it has been noted that decibel-based regulations are "very, very complex." Reeves, 631 F.2d at 386. Moreover, the Legislature was not constitutionally required to enact the least restrictive means of serving this substantial public interest. We agree with the district court that the Arkansas disorderly conduct statute is not substantially overbroad.

### III. Little Rock Permit Ordinance Claims.

The plaintiffs also seek an order declaring that the Little Rock permit ordinance, Little Rock Rev. Code § 32-551, is unconstitutional on its face and as applied. The district court concluded that all three plaintiffs lacked standing to challenge the permit ordinance because they were neither arrested nor charged under it, and were not prohibited from protesting even though they lacked a permit. We agree.

Section 32-547 of the ordinance provides that no person shall engage in a parade or public assembly without a permit. As amended in 2015, Little Rock Rev. Code § 32-546 defines a "public assembly" as "any meeting, demonstration, picket line, rally or gathering of more than twenty (20) persons for a common purpose as a

-10-

result of prior planning that interferes with the normal flow or regulation of pedestrian or vehicular traffic or occupies any public area in a place open to the general public."[4]

The plaintiffs may challenge the permit ordinance facially without applying for a permit if it provides government officials with excessive discretion to permit or deny expressive activity. City of Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 755-56 (1988). This rule alleviates the risk that speakers will self-censor to avoid denial of a permit. Id. at 759. But the plaintiffs must satisfy Article III's injury-in-fact requirement. See Virginia v. Am. Booksellers Ass'n, Inc., 484 U.S. 383, 392-93 (1988); Sullivan v. City of Augusta, 511 F.3d 16, 25 (1st Cir. 2007), cert. denied, 555 U.S. 821 (2008). They may suffer an Article III injury if their First Amendment rights are objectively reasonably chilled, even if they have not been criminally prosecuted under an allegedly unconstitutional statute. Zanders v. Swanson, 573 F.3d 591, 593 (8th Cir. 2009).

The plaintiffs argue their "First Amendment protected activity of attending or organizing future outreaches has been reasonably chilled out of fear of being arrested again." Section 32-551 of the ordinance contains a list of factors used to determine whether to issue a permit. The plaintiffs allege that a myriad of terms in § 32-551 provide city officials with excessive discretion to approve or deny permit applications. But it is undisputed that Holick was aware of the permit ordinance and did not apply for a permit before the September 13 demonstrations, or on September 14 when he did not expect the number of participants to meet the threshold number of ten required for a permit. On neither occasion was any participant arrested or cited for violating the ordinance. Allen testified that in talking to the protestors, he may have mentioned that they lacked a permit "in hopes that they would comply with [his] lawful instructions." Duhe and Holick characterize Lieutenant Allen's statements as a

---

[4]The version of § 32-546 in effect during September 2012 did not specify a minimum number of people necessary for a gathering to be considered a "public assembly." Holick and Duhe knew the City construed this as requiring ten people.

"threat" to enforce the ordinance. But they were arrested for violating the disorderly conduct statute, not the permit ordinance, and they do not assert that the lack of a permit or discussion about the permit ordinance affected their September 14 protest activities.

The plaintiffs failed to make a sufficient showing of a risk that they will self-censor future protected speech activity to avoid denial of a permit required by the Little Rock ordinance. Duhe averred that his *arrest* "put a chill on my returning to Little Rock because the city's rules for avoiding arrest are not clear," and that he "will refrain from using an amplifier until the rules for using one are straightforward and in writing." But the permit ordinance had nothing to do with Duhe's arrest for disturbing the peace by making excessive noise with an amplifier. Holick averred that he "do[es] not know from [the ordinance's] standards how to plan a future event in a way that will meet the ordinance's requirements because the standards are left entirely to the City's discretion." However, on the two days in question, Holick did not obtain a permit, and he has not articulated a desire to return to Little Rock for an event that would meet the ordinance's definition of a public assembly. Thus, Holick has not shown that the permit ordinance will apply to a course of conduct in which he wishes to engage. See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990) (standing of party invoking federal jurisdiction "must affirmatively appear in the record"). Neither Duhe nor Holick has shown that he suffered an injury giving him standing to bring a disfavored facial challenge to the Little Rock permit ordinance. Spirit One clearly lacks standing as an associational plaintiff. See Summers v. Earth Island Inst., 555 U.S. 488, 498 (2009).

## IV. Excessive Detention Claims.

After their arrests at around 9:40 a.m., Little Rock police transported Duhe and Holick to the Jail. Starting at around 10:15 a.m., they were interviewed and photographed, completed paperwork, and Jail personnel inventoried their property.

They were then placed in a holding cell. At around 9:41 p.m., they were given citations with a date for a court hearing and released. Duhe and Holick assert that Pulaski County and the City violated their Fourth Amendment rights by not releasing them from the Jail until almost twelve hours after their arrests.

The Fourth Amendment does not bar arrest and pretrial detention for minor criminal offenses. Atwater, 532 U.S. 318. Arkansas Rule of Criminal Procedure 5.2(b) provides that, "[w]hen a person is arrested for any misdemeanor, the ranking officer on duty at the place of detention to which the arrested person is taken may issue a citation in lieu of continued custody." Pulaski County admits that, once a detainee is booked at the Jail, deciding whether to cite and release that person is in the discretion of the sergeant on shift. Detainees charged with disorderly conduct, a class C misdemeanor, are cited and released if the Jail is too crowded, as it was on the date Duhe and Holick were arrested. Detainees are cited and released from the facility "as expediently as possible," subject to staff availability and the number of detainees to be processed. Detainees who are not cited and released are held until they post bond or make an initial court appearance, which may take as long as 48 hours. Detainees in the intake area must be either released or placed in a housing unit within 23 hours.

The plaintiffs argue the delay in their release violated the Supreme Court's decisions in Gerstein v. Pugh, 420 U.S. 103 (1975) and County of Riverside v. McLaughlin, 500 U.S. 44 (1991). But those cases determined that state authorities must in most circumstances provide a fair and reliable determination of probable cause within 48 hours as a condition for any significant pretrial restraint. 420 U.S. at 124-25; 500 U.S. at 56-57. Here, Duhe and Holick do not assert they were given an unreasonably delayed probable cause hearing. Their grievance is that Arkansas law permitted them to be cited and released, but the Jail unreasonably delayed that process pursuant to an allegedly unconstitutional county policy that directed the Jail to cite and release warrantless arrestees only if the jail headcount was too high. Under this

policy, they assert, "there is no rush to cite and release persons arrested without warrant."

Duhe and Holick cite no Supreme Court or circuit court authority supporting the theory that a twelve-hour delay in their post-arrest release violated the Fourth Amendment. They had no constitutional right to be cited and released and could have been detained until a timely judicial probable cause determination was made under Gerstein and McLaughlin. See Higbee v. City of San Diego, 911 F.2d 377, 379 (9th Cir. 1990) (no constitutional right to "immediate liberty" because state could undertake "the usual post-arrest procedures"). Of course, detainees have been seized, and the Fourth Amendment requires that the duration of that seizure not be unreasonably extended. Arkansas Criminal Rule 5.2(b) allows a jail's ranking officer to release a detainee instead of continuing custody. This is consistent with the flexibility States are permitted in determining post-arrest procedures. See McLaughlin, 500 U.S. at 53; Bryant v. City of New York, 404 F.3d 128, 138 (2d Cir. 2005).

Even if a Jail policy caused Duhe and Holick's release to be delayed, a predicate to § 1983 municipal liability is violation of the plaintiffs' rights. Russell v. Hennepin Cty., 420 F.3d 841, 846 (8th Cir. 2005); Webb v. City of Maplewood, 889 F.3d 483, 486-87 (8th Cir. 2018). Like the district court, we conclude Duhe and Holick failed to show that the Jail's delay in citing and releasing them was unreasonable. The record reflects the delay resulted from normal jail operations. In the immediately preceding days, the average detainee cited and released was held just under ten hours. Watch Commander Jackson Bennett testified that at the beginning of the "A shift" on September 14, there were thirty-two people waiting in the intake area, which he characterized as "pretty high." A large portion of the detainees booked during that period, including on the same shift as the plaintiffs, waited longer to be released. Duhe and Holick were released the same day they were booked, which was not unreasonable given the demands on the Jail's resources. See Bryant, 404 F.3d at

-14-

138-39. There is no evidence their release was delayed because of ill will or opposition to their public demonstrations. Though any delay in implementing the decision to restore a person's liberty is unfortunate, the plaintiffs' Fourth Amendment rights were not violated. Accordingly, Pulaski County is not liable under § 1983, and neither is the City, even if the County's policies should be attributed to the City, as plaintiffs assert.

## V. Conclusion.

Because they are not prevailing parties, the plaintiffs are not entitled to attorney's fees under 42 U.S.C. § 1988. See Doe v. Nixon, 716 F.3d 1041, 1048 (8th Cir. 2013). The judgment of the district court is affirmed.

_____