# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Meredith Logan Whitehurst, Appellant,

v.

Town of Sullivan's Island, Respondent.

Appellate Case No. 2023-001928

-------

Appeal From Charleston County
Bentley Price, Circuit Court Judge

-------

Opinion No. 28290
Heard November 14, 2024 – Filed July 16, 2025

-------

## AFFIRMED

-------

C. Austin Elliott, of Kulp and Elliott, of Charleston, for Appellant.

George Trenholm Walker, James Whittington Clement, and John Phillips Linton, Jr., all of Walker Gressette & Linton, LLC, of Charleston, for Respondent.

-------

**JUSTICE VERDIN:** This is a direct appeal from the circuit court's affirmance of Meredith Logan Whitehurst's municipal court (trial court) conviction for violation of the Town of Sullivan's Island's (the Town's) Disorderly Conduct Ordinance (the Ordinance). The Town cited Whitehurst for violation of the Ordinance for loudly berating the driver of her Uber ride (Driver) with profanity and racial and

xenophobic epithets at almost 2:00 a.m.  After the jury found her guilty, the trial court fined her $1,040.  On appeal to this Court, Whitehurst argues (1) the Ordinance violates the First Amendment of the United States Constitution's protection of private speech, and her words were not "fighting words"; (2) the Ordinance is unconstitutionally vague; (3) the trial court erred in denying her motion for the Town to provide a more definite statement or charge a specific subsection of the Ordinance; and (4) the trial court erred in denying her motion to suppress the video from Driver's dash camera (the Uber Video) because the video was not the entire video and the chain of custody was insufficient.  We affirm.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

On July 11, 2022, Whitehurst and her friend called for an Uber to bring them back from King Street in Charleston to the friend's house on Sullivan's Island.  Driver, an Egyptian-born immigrant, picked them up.  Upon reaching Sullivan's Island, he activated his dash camera.  Driver testified that during the entire drive, Whitehurst spoke very loudly on her phone to the point that it disturbed his driving.  Because he had a headache after driving all day, he asked Whitehurst and her friend to be quiet.  Whitehurst then began mocking Driver and cursing.  When Whitehurst asked Driver to pull the car over before reaching their destination, he stopped the car on Middle Street on Sullivan's Island and told the two women to exit the vehicle.  Whitehurst responded by saying "say that one more time" and "say that one more f*****g time."  She swiped her hand at Driver trying to remove his air pod as he tried to call 911.  While Whitehurst exited the car, she told Driver that he was a "f*****g Arabic piece of s**t" and leaned in to yell at him that he was "not even from our f*****g country."  Finally, when Whitehurst was outside the car, she continued to yell at Driver, telling him to "go back to Islam or wherever the f**k you are from," along with other undecipherable words.  Driver testified Whitehurst's yelling was very loud, and a man walking on the street stopped upon hearing her.  This man, who was the friend's neighbor, walked the women home.

After Driver contacted the Town's police department, Officer Sydney DeNett arrived at the scene, spoke with Driver, and reviewed the Uber Video before finding Whitehurst and her friend at the friend's house.  She ultimately cited both of them for public disorderly conduct under the Ordinance.[1]

---

[1] Although Officer DeNett cited the friend, only Whitehurst's conviction is before

On March 21, 2023, Whitehurst was tried by a jury in the Town's Municipal Court. At the start of trial, Whitehurst asked for clarification on the specific sections of the Ordinance with which she was being charged. The Town responded by narrowing the charged sections to six of the Ordinance's eighteen subsections. Whitehurst then moved to dismiss the claims on due process grounds because she was never informed of the specific charged Ordinance subsections. The trial court denied this motion, Whitehurst's vagueness and First Amendment challenges to the Ordinance, and motions to suppress the Uber Video based on the alleged incompleteness of the video and the fact that the chain of custody was insufficient. During the charge conference, the trial court further limited the applicable Ordinance subsections. Thus, it submitted the following portions of the Ordinance to the jury:

> (A) A person shall be guilty of disorderly conduct if, with the purpose of causing public danger, alarm, disorder or nuisance, or if his or her conduct is likely to cause public danger, alarm, disorder or nuisance, he or she willfully does any of the following acts in a public place or within public view:

> (8) Makes or causes to be made any loud, boisterous and unreasonable noise or disturbance to the annoyance of any other persons nearby, or near to any public highway, road, street, lane, alley, park, square or common, whereby the public peace is broken or disturbed, or the public annoyed;

> . . .

> (12) Makes or causes to be made any loud, boisterous or unreasonable noise or disturbance to annoy other persons nearby, or near to any public highway, road, street, lane, alley, park, square, or common, whereby the public peace is broken or disturbed or the traveling public annoyed . . . .

---

this Court. Therefore, we limit our factual recitation to Whitehurst's actions and not that of the friend or Driver.

After the jury returned a guilty verdict, the trial court fined Whitehurst $1,040. Whitehurst moved for a new trial, which the trial court denied. Whitehurst then timely appealed to the circuit court, which affirmed. This appeal followed.

## II. STANDARD OF REVIEW

"In criminal appeals from a municipal court, the circuit court does not conduct a de novo review; rather, it reviews the case for preserved errors raised to it by an appropriate exception." *City of Cayce v. Norfolk S. Ry. Co.*, 391 S.C. 395, 399, 706 S.E.2d 6, 8 (2011). An appellate court's "scope of review is limited to correcting the circuit court's order for errors of law." *Id.* at 399-400, 706 S.E.2d at 8 (quoting *City of Rock Hill v. Suchenski*, 374 S.C. 12, 15, 646 S.E.2d 879, 880 (2007)).

In considering the constitutionality of a statute, we must "presume the statute is constitutional; we must uphold the statute unless we find beyond a reasonable doubt it does not conform to the constitution." *Owens v. Stirling*, 443 S.C. 246, 260-61, 904 S.E.2d 580, 587 (2024). "The party challenging the constitutionality of a statute must prove it is unconstitutional." *Id.* at 261, 904 S.E.2d at 588.

## III. LAW/ANALYSIS

### A. Protected Speech

Whitehurst argues her conviction under the Ordinance was an unconstitutional regulation of her protected speech under the First Amendment. We disagree.

The First Amendment prohibits laws that abridge the freedom of speech. U.S. Const. amend. I; S.C. Const. art. I, § 2. However, the right to freedom of speech is not absolute. *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 49 (1961); *City of Beaufort v. Baker*, 315 S.C. 146, 150, 432 S.E.2d 470, 472 (1993). "The State may regulate such protected speech through enforcement of content-neutral, time, place, and manner restrictions which are narrowly tailored to serve a significant governmental interest and leave open ample alternative avenues of communication." *Baker*, 315 S.C. at 150, 432 S.E.2d at 472; *see Konigsberg*, 366 U.S. at 50-51 ("General [regulatory] statutes, not intended to control the content of speech but incidentally limiting its unfettered exercise, have not been regarded as the type of law the First or Fourteenth Amendment forbade Congress or the States

to pass, when they have been found justified by subordinating valid governmental interests, a prerequisite to constitutionality which has necessarily involved a weighing of the governmental interest involved.").

"Government regulation of expressive activity is content neutral so long as it is '*justified* without reference to the content of the regulated speech.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)).  Content-neutral statutes that affect speech are subjected to intermediate scrutiny.  *Disabato v. S.C. Ass'n of Sch. Adm'rs*, 404 S.C. 433, 447, 746 S.E.2d 329, 336 (2013).  Applying intermediate scrutiny, the court may uphold a statute that impacts speech "if it serves important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests."  *Id.*

"[C]itizens are entitled to governmental protection from excessive noise: government 'ha[s] a substantial interest in protecting its citizens from unwelcome noise.'"  *Baker*, 315 S.C. at 150-51, 432 S.E.2d at 473 (quoting *Ward*, 491 U.S. at 796).  While the government has the greatest interest in protecting "the well-being, tranquility, and privacy of the home," *Frisby v. Schultz*, 487 U.S. 474, 484 (1988), "it is by no means limited to that context, for the government may act to protect even such traditional public forums as city streets and parks from excessive noise." *Ward*, 491 U.S. at 796.  Furthermore, although the statute regulating speech must be "narrowly tailored," it does not have to be "the least intrusive means of serving the government's interest of controlling noise."  *Baker*, 315 S.C. at 151, 432 S.E.2d at 473.

In *Baker*, this Court considered whether the City of Beaufort's noise ordinance infringed on street preachers' freedom of speech.  315 S.C. at 148-49, 432 S.E.2d 471-72.  This ordinance provided;

> It shall be unlawful for any person to willfully disturb
> any neighborhood or business in the City by making or
> continuing loud and unseemly noises, or by profanely
> cursing and swearing, or using obscene language.  It shall
> further be unlawful for any person to willfully disturb
> any neighborhood or business within the City by the use
> of words which threaten or tend to threaten or incite

physical violence, or which endanger or tend to endanger the health and safety of others within the City.

*Id.* at 149, 432 S.E.2d at 472.

This Court upheld the ordinance "as a valid time, place, and manner restriction," explaining that "both on its face and as applied, [it was] content-neutral, regulating speech solely upon the noise generated, rather than the message conveyed." *Id.* at 150, 432 S.E.2d 472. It also found the ordinance was "narrowly tailored to serve the City's significant interest of controlling the level of noise in its downtown business area," noting "it is the particular circumstances that render a loud communication unseemly or unreasonable, and hence subject to time, place, and manner regulations." *Id.* at 150-51, 432 S.E.2d at 472-73 (quoting *Eanes v. State*, 569 A.2d 604, 613 (Md. 1990)).

Here, Whitehurst argues the charge against her was based solely on her use of insulting and profane language, which she claims is protected speech. The two Ordinance subsections the jury considered, however, addressed only the manner of speech rather than its content. These subsections prohibited a person from willfully making a noise or disturbance that was "loud," "boisterous," and/or "unreasonable" in public. While Officer DeNett testified she considered the profane language Whitehurst used, she also considered the volume of the statements she heard on the Uber Video and asserted the charge could be brought solely on that volume. In its return to the circuit court, the trial court noted the Town was "primarily a residential island" and had an interest in keeping the peace, which is why it enacted the Ordinance.

We find the Ordinance, like the Beaufort ordinance, was content-neutral, regulating speech solely upon the noise generated, rather than the message conveyed. *See City of Columbia v. Brown*, 316 S.C. 432, 436-37, 450 S.E.2d 117, 119-120 (Ct. App. 1994) (explaining that the City's loitering ordinance was limited in application to situations in which the behavior of the person incited a disturbance or breach of the peace, and thus the appellant, who was arrested after shouting obscenities and racial slurs on a public street where private citizens were approaching and refusing to leave, "was not arrested merely for his words, but for his behavior, which included his words"). In addition, it served the Town's important governmental interest in controlling the noise level of the primarily residential island without substantially burdening speech. Whitehurst made no

argument that the subsections of the Ordinance for which she was convicted were invalid time, place, and manner restrictions.[2]  Accordingly, we hold Whitehurst failed to meet her burden of proving Ordinance unconstitutionally infringed on her right to free speech.  *See Owens*, 443 S.C. at 261, 904 S.E.2d at 588. ("The party challenging the constitutionality of a statute must prove it is unconstitutional.").

### B. Vagueness

Whitehurst argues that the trial court erred in denying her motion to dismiss because the Ordinance was unconstitutionally vague. She asserts that the Ordinance failed to give notice of the conduct that was truly prohibited under many of its subsections, and the subjective nature of the Ordinance was misused to charge her for her constitutionally protected speech.[3]  We disagree.

"The concept of vagueness or indefiniteness rests on the constitutional principle that procedural due process requires fair notice and proper standards for adjudication."  *State v. Michau*, 355 S.C. 73, 76-77, 583 S.E.2d 756, 758 (2003) (quoting *Curtis v. State*, 345 S.C. 557, 571, 549 S.E.2d 591, 598 (2001)).  A law is

---

[2] We note Whitehurst's argument on this issue focuses solely on her contention that "[s]tatutes and ordinances that limit speech are only constitutional if the speech in question rises to the level of fighting words," and that her speech did not rise to that level.

[3] Whitehurst does not raise an overbreadth argument.  She also does not argue that the manner of her speech did not violate the two subsections of the Ordinance that were submitted to the jury.  While we hold Whitehurst does not have standing to raise a facial challenge to the remaining subsections of the Ordinance and question her standing as to the two subsections for which she was convicted, we nonetheless address her vagueness challenge to those two subsections. *See Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 n.7 (1982) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." (quoting *Parker v. Levy*, 417 U.S. 733, 756 (1974))); *In re Amir X.S.*, 371 S.C. 380, 384 n.2, 639 S.E.2d 144, 146 n.2 (2006) ("The traditional rule of standing for facial attacks provides that one to whom application of a statute is constitutional may not attack the statute on grounds that it might be unconstitutional when applied to other people or situations.").

considered "unconstitutionally vague if it forbids or requires the doing of an act in terms so vague that a person of common intelligence must necessarily guess as to its meaning and differ as to its application." *Curtis*, 345 S.C. at 572, 549 S.E.2d at 598. Thus, "a statute may be unconstitutionally vague where '(1) it does not provide fair notice of the conduct proscribed,' or '(2) it confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed[.]'" *S.C. Dep't of Soc. Servs. v. Michelle G.*, 407 S.C. 499, 505, 757 S.E.2d 388, 392 (2014) (quoting *In re Gentry*, 369 N.W.2d 889, 893 (Mich. Ct. App. 1985)); *see Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972) (explaining a vague law may (1) trap the innocent by failing to give fair notice of what is prohibited; (2) may risk arbitrary or discriminatory enforcement by delegating too much authority to policemen, judges, and juries; and (3) may chill the exercise of First Amendment freedoms). However, "when a provision is sufficiently clear as to the conduct it proscribes, 'the speculative danger of arbitrary enforcement [will] not render the ordinance void for vagueness.'" *State v. Lewis*, 434 S.C. 158, 168, 863 S.E.2d 1, 6 (2021) (alteration in original) (quoting *Vill. of Hoffman Ests.*, 455 U.S. at 503).

Furthermore, "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Grayned*, 408 U.S. at 110. "[A]ll the Constitution requires is that the language convey sufficiently definite warnings as to the proscribed conduct when measured by common understanding and practices." *Michelle G.*, 407 S.C. at 506, 757 S.E.2d at 392 (alteration in original) (quoting *Curtis*, 345 S.C. at 572, 549 S.E.2d at 599). "The requirement that statutory language must be reasonably certain is satisfied 'by the use of ordinary terms which find adequate interpretation in common usage and understanding,' or if the term can be given meaning by reference to other definable sources." *Id.* (quoting *Matter of Appeal in Maricopa Cnty. Juv. Action Nos. JS-5209 & JS-4963*, 692 P.2d 1027, 1034 (Ariz. Ct. App. 1984) (omission in original)); *see Curtis*, 345 S.C. at 572, 549 S.E.2d at 599 (noting when the statute's terms "have common, ordinary meanings sufficient to proscribe conduct," they do not need to be specifically defined). A statute is not unconstitutionally vague simply because it "uses undefined terms or could have been drafted more precisely." *Lewis*, 434 S.C. at 167, 863 S.E.2d at 6. This Court will only declare a legislative action unconstitutional "when its invalidity appears so clearly as to leave no room for reasonable doubt that it violates a provision of the constitution." *S.C. Hum. Affs. Comm'n v. Zeyi Chen*, 430 S.C. 509, 528–29, 846 S.E.2d 861, 871 (2020) (quoting *Joytime Distribs. & Amusement Co., Inc. v. State*, 338 S.C. 634, 640, 528 S.E.2d

647, 650 (1999)). "A possible constitutional construction must prevail over an unconstitutional interpretation." *Id.* at 529, 846 S.E.2d at 871 (quoting *State v. Neuman*, 384 S.C. 395, 402, 683 S.E.2d 268, 271 (2009)).

Whitehurst relies on the Fourth Circuit's opinion in *Carolina Youth Action Project v. Wilson*, 60 F.4th 770 (4th Cir. 2023), in which the court found South Carolina's disorderly conduct statute[4] and disturbing schools statute[5] were unconstitutionally vague as applied to students. The Fourth Circuit found the terms "disorderly," "boisterous," "obscene," and "profane" did "not explain the law's scope or limit the discretion of those charged with enforcing it." *Id.* at 783. It explained, "How does this statute objectively distinguish *criminally* disorderly, boisterous, obscene, or profane childhood misbehavior from *garden-variety* disorderly, boisterous, obscene, or profane childhood misbehavior?" *Id.* at 782-83.

We find this case distinguishable. First, the Fourth Circuit found the statutes unconstitutionally vague only as applied to students. It did not create a universal rule that including the word "boisterous" rendered a law unconstitutional. Next, while the Ordinance shared the term "boisterous" with the statutes the Fourth Circuit considered, it also included the terms "loud" and "unreasonable" to describe the prohibited noise or disturbance. All three of these words "have common, ordinary meanings sufficient to proscribe conduct" and have survived vagueness challenges. *Curtis*, 345 S.C. at 572, 549 S.E.2d at 599 (noting when the statute's terms "have common, ordinary meanings sufficient to proscribe conduct," they do not need to be specifically defined). Finally, considering these words within the context of the pertinent parts of the Ordinance further limits their meanings. *See State v. Dawkins*, 352 S.C. 162, 166, 573 S.E.2d 783, 785 (2002) ("[E]ven though penal statutes are to be strictly construed, the canons of construction certainly allow the court to consider the statute as a whole and to interpret its words in light of the context." (internal quotation marks omitted) (quoting *Rorrer v. P.J. Club, Inc.*, 347 S.C. 560, 568, 556 S.E.2d 726, 730 (Ct. App. 2001))); *Zeyi Chen*, 430 S.C. at 529, 846 S.E.2d at 871 ("A possible constitutional construction must prevail over an unconstitutional interpretation." (quoting *Neuman*, 384 S.C. at 402, 683 S.E.2d at 271)).

---

[4] S.C. Code Ann. § 16-17-530(A)(1) & (2) (2015).

[5] S.C. Code § 16-17-420(1) (2015) (effective June 2, 2010 to May 16, 2018).

This Court in *Baker* concluded the terms "loud and unseemly" gave sufficient notice of what conduct was penalized and thus did not render the ordinance unconstitutionally vague. 315 S.C. at 152, 432 S.E.2d at 473. It explained "'[u]nseemly' modifies 'loud' and means 'unreasonably loud in the circumstances.' That is clear enough." *Id.* at 152, 432 S.E.2d at 474 (quoting *Eanes*, 569 A.2d at 616). Other courts have also held the use of term "loud" and the term "boisterous" in noise or disturbing the peace laws withstood vagueness challenges. *See Kovacs v. Cooper*, 336 U.S. 77, 79 (1949) (holding that although the words "loud and raucous" were abstract, "they have through daily use acquired a content that conveys to any interested person a sufficiently accurate concept of what is forbidden"); *Roy v. City of Monroe*, 950 F.3d 245, 253 (5th Cir. 2020) (explaining the terms "'violence,' 'boisterousness,' and 'provocativeness' [were] 'concepts familiar to common usage and everyday speech,'" and concluding a disturbing the peace ordinance was not void for vagueness); *City of Lansing v. Hartsuff*, 539 N.W.2d 781, 785 (Mich. Ct. App. 1995) ("We agree with the lower court that an ordinary person exercising common sense can sufficiently understand the term 'loud or boisterous,' especially when the term is modified by the phrase 'disturb the public peace and quiet.'"); *id.* ("By the same token, we conclude that the term is not so subjective and vague as to permit unlimited discretion on the part of prosecutors, police officers, and jurors.").

Further, this Court has recognized the common usage of the term reasonable, explaining "[t]he objective 'reasonable' test is used in many areas of the law as an appropriate determinant of liability and thus a guide to conduct." *Baker*, 315 S.C. at 152-53, 432 S.E.2d at 474 (quoting *Eanes*, 569 A.2d at 616); *see e.g., State v. Moore*, 415 S.C. 245, 252, 781 S.E.2d 897, 900 (2016) ("The Fourth Amendment provides in relevant part that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable* searches and seizures, shall not be violated.'" (alteration in original) (emphasis added) (quoting *United States v. Jones*, 565 U.S. 400, 404 (2012))); *id.* at 252-53, 781 S.E.2d at 901 (describing the reasonable suspicion standard as "not 'readily or even usefully, reduced to a neat set of legal rules,'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989), and that "[c]ourts must give due weight to common sense judgments reached by officers in light of their experience and training," *State v. Taylor*, 401 S.C. 104, 113, 736 S.E.2d 663, 667 (2013), and "consider 'the totality of the circumstances—the whole picture,'" *Sokolow*, 490 U.S. at 8); *Robinson v. State*, 407 S.C. 169, 181, 754 S.E.2d 862, 868 (2014) ("A person has been seized within the meaning of the Fourth Amendment at the point in time when, in light of all the circumstances

surrounding an incident, *a reasonable person* would have believed that he was not free to leave." (emphasis added)); *State v. Baccus*, 367 S.C. 41, 49, 625 S.E.2d 216, 220 (2006); ("Probable cause for a warrantless arrest exists when the circumstances within the arresting officer's knowledge are sufficient to lead *a reasonable person* to believe that a crime has been committed by the person being arrested." (emphasis added)); *Dean v. Ruscon Corp.*, 321 S.C. 360, 363-64, 468 S.E.2d 645, 647 (1996) (stating that under the discovery rule, the statute of limitations begins to run "from the date the injured party either knows or should know, by the exercise of *reasonable* diligence that a cause of action exists for the wrongful conduct" and the "exercise of reasonable diligence" means "that the injured party must act with some promptness where the facts and circumstances of an injury place *a reasonable person* of common knowledge and experience on notice that a claim against another party might exist." (emphasis added)).

As the Indiana Court of Appeals observed "the clear majority trend has recognized that 'unreasonable noise' provisions which are construed only to prohibit unprotected speech are not unconstitutionally vague." *Price v. State*, 600 N.E.2d 103, 109 (Ind. Ct. App. 1992), *aff'd in part, vacated in part*, 622 N.E.2d 954 (Ind. 1993); *see Cameron v. Johnson*, 390 U.S. 611, 616 (1968) (holding the word "unreasonably" was "a widely used and well understood word"); *Duhe v. City of Little Rock*, 902 F.3d 858, 864 (8th Cir. 2018) (finding the term 'unreasonably' was a "widely understood restriction[]" that required no guessing at its meaning); *People v. Fitzgerald*, 573 P.2d 100, 102-103 (Colo. 1978) (noting "the word 'unreasonable is often used in the law'" and holding the term "unreasonable noise" was not vague); *State v. Anonymous (1972-4)*, 298 A.2d 52, 54 (Conn. Cir. Ct. 1972) (holding a disorderly conduct statute, which penalized "making an unreasonable noise" among other conduct was "drawn with sufficient precision to give men of ordinary intelligence notice of proscribed conduct and that the terms used were "not so vague that men of common intelligence must guess as to their meaning"); *Price v. State*, 622 N.E.2d 954, 967 (Ind. 1993) (holding the language of a disorderly conduct statute did not "invite arbitrary or discriminatory enforcement" because the statute's "reasonableness standard provide[d] a constraining and intelligible enforcement guideline for police and prosecutors"); *Twp. of Plymouth v. Hancock*, 600 N.W.2d 380, 383 (Mich. Ct. App. 1999) (stating the reasonable person standard in disturbing the peace ordinance "assure[d] that 'the person of ordinary intelligence [has] a reasonable opportunity to know what is prohibited, so that he may act accordingly'" and "serves to prevent any ad hoc and subjective application by police officers, judges, juries, or others

empowered" to enforce the ordinance (alteration in original) (quoting *Grayned*, 408 U.S. at 108)); *People v. Bakolas*, 449 N.E.2d 738, 739-40 (N.Y. 1983) (holding a law prohibiting making "unreasonable noise" with "intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof" was not unconstitutionally vague and defining the term "unreasonable noise" as "a noise of a type or volume that a reasonable person, under the circumstances, would not tolerate"); *State v. Marker*, 536 P.2d 1273, 1275-77 (Or. Ct. App. 1975) (holding disorderly conduct statute prohibiting "making an unreasonable noise" was not unconstitutionally vague because it "is described with words of common usage with a well defined, well understood and generally accepted meaning, and, as written, enables men of common intelligence to understand what conduct is prohibited"); *City of Madison v. Baumann*, 470 N.W.2d 296, 302 (Wis. 1991) (concluding that the word "reasonably" saved a disturbing the peace ordinance from "the infirmity of vagueness;" explaining "[t]he reasonable-person standard is one that has been relied upon in all branches of the law for generations" and holding "[t]he test for a possible violator is simply the time honored and time validated reasonable person test, *i.e.*, what effect will my conduct . . . have upon persons in the vicinity under the circumstances").

We must consider the description of the prohibited noise or disturbance within the context of the pertinent parts of the Ordinance. We, therefore, next consider whether the Ordinance's references to the "public" or "traveling public" being "annoyed" renders the Ordinance unconstitutionally vague. The Supreme Court has "struck down statutes that tied criminal culpability to whether the defendant's conduct was 'annoying' or 'indecent'—wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *United States v. Williams*, 553 U.S. 285, 306 (2008). It has explained, "Conduct that annoys some people does not annoy others." *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971); *see also City of Greenville v. Bane*, 390 S.C. 303, 306-309, 702 S.E.2d 112, 113-14 (2010) (holding an ordinance making it illegal to "[m]olest or disturb any person by the making of obscene remarks or such remarks and actions as would humiliate, insult, or scare any person" was unconstitutionally vague "because the words that humiliate, insult, or scare one person may not have the same effect on another person").

However, "a scienter[6] requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Vill. of Hoffman Ests.*, 455 U.S. at 499; *see United States v. Shrader*, 675 F.3d 300, 311 (4th Cir. 2012) ("[T]he constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of *mens rea*." (alteration in original) (quoting *Colautti v. Franklin*, 439 U.S. 379, 395 (1979))).  The Eighth Circuit held Arkansas's disorderly conduct statute was not impermissibly vague because with its *mens rea* requirement "a disorderly conduct conviction [could not] be based solely on the reactions of third parties; the offender must intend to cause public inconvenience, annoyance, or alarm by obstructing traffic or making unreasonable or excessive noise, or must recklessly disregard the risk of doing so." *Duhe*, 902 F.3d at 864.

In contrast, although the Fourth Circuit recognized that "a scienter requirement may mitigate a law's vagueness," it found the South Carolina disturbing schools law's application to conduct that is "'willful[] or unnecessar[y]' ma[de] the problem worse, not better" because with its use of the disjunctive "prosecutors need never show willfulness (or purpose, knowledge, intent, or any other culpable state of mind) so long as they can prove the offending conduct was done 'unnecessarily'—a word steeped in its own vagueness problems." *Carolina Youth Action Project*, 60 F.4th at 786 (first two alterations in original).

The Ordinance here does not have the same problem.  It includes a scienter requirement necessitating a person *willfully* do any of the prohibited acts "with the purpose of causing public danger, alarm, disorder or nuisance, or if his or her conduct is likely to cause public danger, alarm, disorder or nuisance . . . in a public place or within public view" to sustain a conviction.  Therefore, a violation of the Ordinance is not based on the reactions of specific third parties, but on the offender's intention or the likelihood their actions will cause public nuisance based on generally accepted norms, i.e. the reasonable person standard.  This intent requirement narrows the description of the prohibited noise, further alleviating vagueness concerns.  *Bakolas*, 449 N.E.2d at 740 (holding that the requirement that

---

[6] *Scienter*, *Black's Law Dictionary* (12th ed. 2024) ("A degree of knowledge that makes a person legally responsible for the consequences of his or her act or omission; the fact of an act's having been done knowingly, esp. as a ground for civil damages or criminal punishment.").

the unreasonable noise "be intended to cause, or recklessly create a risk of, public inconvenience, annoyance or alarm, narrows the definition, so that no inadvertently disturbing act may be punished"); *Hartsuff*, 539 N.W.2d at 785 ("We agree with the lower court that an ordinary person exercising common sense can sufficiently understand the term 'loud or boisterous,' especially when the term is modified by the phrase 'disturb the public peace and quiet.'").

Using common and ordinary terms, the Ordinance provides fair notice of what is prohibited and specific guidelines for its enforcement. *See Grayned*, 408 U.S. at 108-09 (1972) (explaining a vague law may (1) trap the innocent by failing to give fair notice of what is prohibited; (2) may risk arbitrary or discriminatory enforcement by delegating too much authority to policemen, judges, and juries); *Michelle G.*, 407 S.C. at 506, 757 S.E.2d at 392 ("The requirement that statutory language must be reasonably certain is satisfied 'by the use of ordinary terms which find adequate interpretation in common usage and understanding,' or if the term can be given meaning by reference to other definable sources." (omission in original) (quoting *Matter of Appeal in Maricopa Cnty. Juv. Action Nos. JS-5209 & JS-4963*, 692 P.2d at 1034). The terms "loud," "boisterous," and "unreasonable," whether in the disjunctive or conjunctive, describing a noise or disturbance clearly prohibit yelling on a public street at almost 2 a.m. in a residential area such as Sullivan's Island.

As the challenger to the constitutionality of the Ordinance, Whitehurst has the burden of proving the Ordinance was unconstitutionally vague. *See Owens*, 443 S.C. at 261, 904 S.E.2d at 588. ("The party challenging the constitutionality of a statute must prove it is unconstitutional."). We hold she failed to meet this burden.

### C.  Multiple Ordinance Subsections

Whitehurst argues that the trial court erred by allowing the Town to proceed against her under multiple subsections not specified on the charging document, violating her Due Process rights as provided by the Fourteenth Amendment of the United States Constitution. She also argues that the court erred by denying her motion for a directed verdict, claiming that she could not effectively assert her rights and defenses without the Town setting forth her prohibited conduct.

Whitehurst cites no authority other than a passing reference to the Fourteenth Amendment to support her argument. We find her argument is conclusory and,

thus, abandoned. *See First Sav. Bank v. McLean*, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (noting when a party fails to cite authority, the party is deemed to have abandoned the issue on appeal); *id.* ("Mere allegations of error are not sufficient to demonstrate an abuse of discretion. On appeal, the burden of showing abuse of discretion is on the party challenging the trial court's ruling.").

### D. Motion to Suppress the Uber Video

Whitehurst argues the trial court erred in denying her motions to suppress the Uber Video because (1) the video was not the entire video of the incident and is, therefore, prejudicial; and (2) there were deficiencies in the chain of custody related to Driver's delivery of the video to the Town. Whitehurst cites no authority other than the standard of review for evidentiary decisions and fails to develop her arguments. Her arguments are conclusory and, therefore, abandoned. *See First Sav. Bank*, 314 S.C. at 363, 444 S.E.2d at 514 (noting when a party fails to cite authority or the argument is simply a conclusory statement, the party is deemed to have abandoned the issue on appeal); *id.* ("Mere allegations of error are not sufficient to demonstrate an abuse of discretion. On appeal, the burden of showing abuse of discretion is on the party challenging the trial court's ruling.").[7]

## IV. CONCLUSION

We hold Whitehurst failed to meet her burden of proving the Ordinance infringed on her right to Free Speech or was unconstitutionally vague. In addition, we find her remaining arguments are conclusory, and thus, abandoned. We, therefore, affirm Whitehurst's conviction for disorderly conduct.

**AFFIRMED.**

**FEW, JAMES and HILL, JJ., concur. KITTREDGE, C.J., dissenting in a separate opinion.**

---

[7] We note Whitehurst's arguments are meritless as Driver and Officer DeNett both identified the Uber Video as the one Driver took from his dash camera on the night of the incident and sent to Officer DeNett. *See State v. Freiburger*, 366 S.C. 125, 134, 620 S.E.2d 737, 741 (2005) (stating that when evidence is "non-fungible evidence—that is, evidence that is unique and identifiable—the establishment of a strict chain of custody is not required").

**CHIEF JUSTICE KITTREDGE:** I respectfully dissent with respect to the majority's analysis and disposition of Appellant Meredith Whitehurst's vagueness argument. In my view, the Town of Sullivan's Island disorderly conduct ordinance affords too much discretion to law enforcement to pick and choose whether someone's behavior in any given instance constitutes a crime. I therefore do not believe the ordinance provides adequate notice of the scope of prohibited conduct. I am likewise concerned that, while the ordinance itself is facially content-neutral, its open-ended language will invariably result in the exercise of law enforcement discretion without guardrails. That, in turn, will result in the criminalization of speech based purely on its content, which unquestionably occurred here. The constitutional guarantee of the freedom of speech forbids such a result. Accordingly, with great respect for the majority, I dissent from this Court's affirmance of Whitehurst's disorderly conduct conviction.

## I.

I first take the opportunity to fully set forth the facts that I believe bear on the requisite legal analysis.

On the night in question, just before 2 a.m., Uber driver Ahmed Ghozlan picked up Whitehurst and her friend Virginia Galbraith in downtown Charleston, South Carolina, after the two women had been out drinking. While en route to Galbraith's home on Sullivan's Island, Whitehurst talked loudly on the phone to her boyfriend. Ghozlan told Whitehurst to either "please be quiet" (according to him) or "shut the fuck up" (according to her), and Whitehurst got off the phone and began talking quietly in the backseat of the van with Galbraith. It was in the middle of this quiet conversation that Ghozlan's dash camera began recording the subsequent interaction between the three.

While the women continued their conversation, Ghozlan audibly sighed loudly enough to get their attention, at which point they asked Ghozlan to stop the van because "clearly [they] were a problem to [him]." Galbraith told Ghozlan she would be filing a complaint with Uber about his behavior during the drive, calling him "an asshole." After stopping the car at the nearest curb (before reaching their final destination at Galbraith's house), Ghozlan told the women to "go ahead," informing them that his dash camera was recording and *he* planned to report *them* to Uber, and telling them to "get out" several times before muttering "shit." The women became incredulous and began talking louder, with Whitehurst telling Ghozlan to "say that one more fucking time" and Galbraith stating, "Keep swearing because we'll send it

to Uber." Ghozlan put in an ear bud, and Whitehurst told him she had recorded their entire interaction "before [he] put [his] ear plugs in," moving her hand toward his ear before aborting the gesture.[8] Ghozlan removed the ear bud and told the women in a louder voice to get out because he was calling 911. On her way out of the vehicle, Whitehurst began mocking Ghozlan, saying "aww, call 911 and get us arrested, you're not even from this fucking country, you fucking Arabic piece of shit." Once outside of the vehicle, both women continued speaking in loud voices through the open van door toward Ghozlan, with Whitehurst telling him, "go back to Islam or wherever the fuck you're from and put your ear plugs in over there, buddy" while Galbraith again informed him (loudly) that she was going to call Uber and file a complaint against him. The women then walked away, speaking to one another in voices loud enough to be picked up on the dash camera but quiet enough that their words were unintelligible. Galbraith's male neighbor was out walking at the time and, believing Ghozlan was following the women, escorted them home.

Ghozlan followed through on his threat to call the police, reporting to the 911 operator that two women had just left his vehicle after "assaulting" him for being Muslim. Officers Sydney DeNett and Joseph McMullen responded to the scene, watching the dash camera video before driving to Galbraith's house and interviewing the women.[9] During the conversation, the officers explained the women had violated the Sullivan's Island disorderly conduct ordinance "because of the cursing out in public and yelling out in the street." The officers likewise stated numerous times how offensive Whitehurst's comments to Ghozlan were and that the racial and xenophobic nature of the comments played heavily into their decision to arrest both women. For example, at various points in the conversation, the officers stated,

- "[Galbraith], you literally called him an asshole, that's it. Out of the two of you, you are by far the least in trouble right now."

- "[Galbraith is] not in nearly as much trouble as [Whitehurst] is."

- "[Galbraith's] and [Whitehurst's] situation[s] are two different things, okay? You [Galbraith] will not be tried for [Whitehurst's] words."

- "What you did is disorderly conduct, right? But what God has called out

---

[8] The video shows Whitehurst did not actually touch Ghozlan.

[9] This conversation was recorded on Officer DeNett's body camera.

today, was it the fact that you [(Galbraith)] were disorderly, or was it slurs made by the other party [[Whitehurst)]?"

- "You should feel grateful [Officer DeNett is] being lenient [by just writing a ticket] because that's a jailable offense, with racial bias."

- "Someone sighing is completely different than racial bias."

Whitehurst proceeded to trial before a municipal court jury. The prosecution called two witnesses, Ghozlan and Officer DeNett, and introduced into evidence the dash camera and body camera videos. In relevant part, when asked why she issued a ticket to Whitehurst, Officer DeNett testified at least three times, on both direct and cross-examination, that the racist nature and content of Whitehurst's language significantly factored into her decision, not merely Whitehurst's volume. For example, while she was responding to questioning from Whitehurst's attorney, the following colloquy with Officer DeNett occurred:

> Q: As you sit here today is it your testimony that you brought this charge of disorderly conduct against the defendant, Ms. Whitehurst, on the basis of anything in particular that was said to Mr. Ghozlan?
>
> A: It was the manner, the boisterous manner, *the profane language* in public into a public roadway *as well*.
>
> . . . .
>
> Q: Officer DeNett, is it fair to characterize your prior testimony today that one of the aspects that informed your decision to eventually bring this charge was the volume of statements that you heard while watching this dash camera video?
>
> A: Yes; **and** *the words that were used, the profane language* and the volume.
>
> Q: *Both in conjunction, is that right?*
>
> A: *I would say so in this case.*
>
> Q: Would you have made a different determination if no profane language or reference to any race was used?

A: I would have to take that on a case by case [basis].

(Emphasis added). Importantly, Whitehurst's attorney also asked Officer DeNett whether she believed there would be a basis for bringing a charge for disorderly conduct against a citizen yelling on the sidewalk, to which she responded: "Are they disturbing others or is it a quick, hey, how are you doing? *It depends on the context of what . . . they're yelling.* **That's very vague.**" (Emphasis added).

Finally, Whitehurst's attorney asked Officer DeNett about how she handled noise complaints while on duty. She stated that unless she personally heard something or the address had a history of complaints, she would not write a ticket for a noise ordinance violation. She admitted no one besides Ghozlan called the police to complain about Whitehurst's or Galbraith's behavior or volume on the night in question.

The jury found Whitehurst guilty, and the judge apologized to Ghozlan, stating:

> Hopefully what happens today will give you some relief from that, and knowing that [the jurors] all heard the testimony and they decided . . . that *the young lady was out of line when she said **what** she said* to you because nobody should say *that* to you.

(Emphasis added).

Whitehurst appealed her conviction, which ultimately ended up before this Court.[10]

## II.

I begin my analysis by emphasizing I in no manner condone the offensive statements made by Whitehurst. The legal question, however, does not turn on one's personal feelings regarding those statements. Rather, the United States Constitution and its guarantee of the freedom of speech protects even outrageous or offensive language.[11]

---

[10] Curiously, Galbraith's prosecution was not pursued, and will not be pursued, until this (Whitehurst's) appeal is fully resolved. I find it extremely unusual—and, perhaps, telling—that there has been a three-year delay in prosecuting the charge against Galbraith.

[11] Of course, First Amendment protections do not extend to fighting words—"those which by their very utterance inflict injury or tend to incite an immediate breach of

*Snyder v. Phelps*, 562 U.S. 443, 458 (2011) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." (quoting *Texas v. Johnson*, 491 U.S. 397, 414 (1989))). With this consideration in mind, I turn to the legal issues raised.

### III.

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *Colten v. Kentucky*, 407 U.S. 104, 110 (1972) ("The root of the vagueness doctrine is a rough idea of fairness."). To survive a vagueness challenge, a statute must satisfy two "independent" criteria: fair notice, and a framework that ensures evenhanded enforcement and adjudication. *Hill v. Colorado*, 530 U.S. 703, 732 (2000); *City of Beaufort v. Baker*, 315 S.C. 146, 152, 432 S.E.2d 470, 473–74 (1993) (quoting *State v. Albert*, 257 S.C. 131, 134, 184 S.E.2d 605, 606–07 (1971)). Specifically, a statute must "give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972) (quoting *United States v. Harriss*, 347 U.S. 612, 617 (1954)); *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Likewise, a statute must provide "explicit standards" for law enforcement, judges, and juries to apply so as to avoid "arbitrary and erratic arrests and convictions." *Papachristou*, 405 U.S. at 162; *Grayned*, 408 U.S. at 108–09; *see also Sessions v. Dimaya*, 584 U.S. 148, 156 (2018) ("In that sense, the [vagueness] doctrine is a corollary of the separation of powers—requiring that Congress, rather than the executive or judicial branch, define what conduct is sanctionable and what is not." (citing *Kolender*, 461 U.S. at 358 n.7)).

These two criteria are closely interrelated: "If a would-be offender cannot reasonably understand the conduct to be proscribed, then neither would a police officer." *Town*

the peace." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942). However, during trial, Sullivan's Island expressly conceded Whitehurst's speech did not amount to fighting words. Likewise, there is no contention Whitehurst's diatribe fell into another unprotected category of speech, including inciting words or true threats. *See Counterman v. Colorado*, 600 U.S. 66, 69 (2023); *Chaplinsky*, 315 U.S. at 571–72. That being the case, we must decide this case on the basis that Whitehurst's speech, no matter how offensive, did not fall outside the bounds of the First Amendment's protection.

*of Mount Pleasant v. Chimento*, 401 S.C. 522, 542, 737 S.E.2d 830, 842 (2012) (Hearn, J., dissenting) (citing *People v. Stuart*, 797 N.E.2d 28, 34–35 (N.Y. 2003)). However, the United States Supreme Court has acknowledged that the second criterion—clear and objective standards for enforcement—is the "more important" part of the vagueness inquiry. *See Kolender*, 461 U.S. at 358; *Smith v. Goguen*, 415 U.S. 566, 574 (1974) (explaining that because people's behavior is typically "not mapped out in advance on the basis of statutory language," the more meaningful aspect of the vagueness doctrine is not actual notice but, instead, the requirement that the legislature establish guidelines to limit the discretion of law enforcement).

Looking only at the relevant portions of the ordinance at issue in this case (quoted in full in the majority opinion), in summary, to secure a conviction Sullivan's Island must show either:

A. Under subsection (A)(8),

    a.  The noise was (1) loud; (2) boisterous; *and* (3) unreasonable;

    b.  The noise "annoyed" other people nearby; and

    c.  The public peace was broken *or* the public was "annoyed."

B. Under subsection (A)(12),

    a.  The noise was either (1) loud; (2) boisterous; *or* (3) unreasonable;

    b.  The noise was intended to "annoy" other people nearby *or* was made near a public road, street, lane, or alley; and

    c.  The public peace was broken *or* the "traveling public" was "annoyed."[12]

---

[12] Interestingly, despite the third element of both subsections (8) and (12), Sullivan's Island claimed during closing arguments that it did not need to bring in a witness to establish that the public peace was broken or disturbed, or the public annoyed. Apparently buying into Sullivan's Island's position, the majority contends Whitehurst's behavior unquestionably fell within the ordinance such that she lacks standing to raise a vagueness challenge. *See Chimento*, 401 S.C. at 535, 737 S.E.2d at 839 ("One whose conduct clearly falls within the statutory prescription does not have standing to raise a void-for-vagueness challenge."). I

*See* Sullivan's Island, S.C., Code of Ordinances § 132.08(A)(8), (12) (2025).[13]  Thus, under either subsection, the terms "annoy," "boisterous," and "unreasonable" assume central importance.  In my view, these three terms are sufficiently indefinite that the entirety of both subsections must be found void for vagueness.  I address each term.

### A.

Looking first at the term "annoy," the United States Supreme Court has previously applied the vagueness doctrine to strike down statutes that tied criminal culpability to whether the defendant's conduct was "annoying."  *See, e.g.*, *United States v. Williams*, 553 U.S. 285, 306 (2008); *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971); *Saia v. New York*, 334 U.S. 558, 562 (1948); *Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 787 (4th Cir. 2023).  The term "annoy" requires law enforcement or a trier of fact to make a wholly subjective judgment given that "[c]onduct that annoys some people does not annoy others."  *Coates*, 402 U.S. at 614.  Thus, a statute requiring proof of a defendant's "annoying" conduct or a third party's "annoyance" does not sufficiently specify a proscribed standard of conduct.[14]

---

disagree.  In short, no member of the public complained (to law enforcement or otherwise) about Whitehurst's volume or conduct aside from Ghozlan (who was directly involved in the argument).  In fact, Galbraith's neighbor, who witnessed at least the tail end of the argument, believed *Ghozlan* was the problem and therefore walked the two women home following the incident.  Notwithstanding the apparent definitive dismissal of the vagueness challenge on lack of standing, the majority devotes much of its opinion to analyzing the merits of the vagueness issue.

[13] Both subsections also contain a scienter requirement set forth in the prefatory language of subsection (A).  I address that requirement separately below.

[14] *Cf. Winters v. New York*, 333 U.S. 507, 517 (1948) ("When do [emotions such as 'hatred' or 'hostility'] arise?  Is it to be left to a jury to conclude beyond reasonable doubt when the emotion of hatred or hostility is aroused in the mind of the listener as a result of what a speaker has said?  Nothing in our criminal law can be invoked to justify so wide a discretion."); *City of Greenville v. Bane*, 390 S.C. 303, 309, 702 S.E.2d 112, 114 (2010) ("[T]he words 'humiliate,' 'insult,' and 'scare' are not sufficiently definite to give reasonable notice of the prohibited conduct. . . .  [T]he words that humiliate, insult, or scare one person may not have the same effect on

## B.

Similarly, the United States Court of Appeals for the Fourth Circuit recently held South Carolina's disorderly conduct statute,[15] which criminalizes conducting oneself in a "disorderly or boisterous manner," was unconstitutionally vague as applied to elementary and secondary school students. *Carolina Youth Action Project*, 60 F.4th at 781. The Fourth Circuit noted the statute provided no mechanism for law enforcement, judges, or juries to "distinguish *criminally* disorderly, boisterous, obscene, or profane childhood misbehavior from *garden-variety* disorderly, boisterous, obscene, or profane childhood misbehavior." *Id.* at 782–83 ("Based solely on the dictionary definitions of the statutory terms—particularly disorderly and boisterous—it is hard to escape the conclusion that any person passing a schoolyard during recess is likely witnessing a large-scale crime scene."). Due to the uncertainty about what acts of juvenile mischief were or were not prohibited by the law, the Fourth Circuit opined that law enforcement officers were required to "deploy a glorified smell test to determine whether a student's disorder is disorderly enough to be criminal." *Id.* at 784 ("For example, one police officer testified arrest may be appropriate if 'someone is causing such a disturbance that it would cause me to look over and see what's going on,' but not if 'someone is having a loud discussion with someone.'" (internal alteration marks omitted)). The Fourth Circuit concluded,

> It is true that law enforcement officials routinely consider the totality of the circumstances in assessing whether a person in fact did something that violates the law such as stealing, selling drugs, or the like. But we are unaware of any crime—nor could the Attorney General cite one—requiring a multifactored balancing test to determine *whether a thing a person undisputedly did* is unlawful in the first place.

*Id.* ("[W]hether that student is scolded or arrested turns on the whims of a school resource officer.").

Here, it is likewise difficult under the ordinance as currently written for a citizen, law enforcement officer, judge, or jury to clearly draw a line between garden-variety

---

another person. Therefore, people of common intelligence may be forced to guess at the provision's meaning and may differ as to its applicability.").

[15] S.C. Code Ann. § 16-17-530 (Supp. 2024).

boisterous conduct and criminally boisterous conduct.[16]  Rather, Sullivan's Island law enforcement officers are required to "deploy a glorified smell test to determine whether a [citizen's] disorder is disorderly *enough* to be criminal." *Id.* (emphasis added).  In fact, Officer DeNett specifically acknowledged that reality during her trial testimony when asked if a disorderly conduct charge would be appropriate against someone yelling on the sidewalk, stating in response to the question, "Are they disturbing others or is it a quick, hey, how are you doing? *It depends on the context of what . . . they're yelling.  **That's very vague**.*"  (Emphasis added); *see Carolina Youth Action Project*, 60 F.4th at 784 (placing emphasis on similar testimony from the officer in that case).  It is difficult to see how the ordinance at issue here is *not* unconstitutionally vague when apparently even law enforcement has to apply some sort of subjective "multifactored balancing test to determine *whether a thing [Whitehurst] undisputedly did* is unlawful in the first place." *Id.*

## C.

While "annoy" and "boisterous" are problematically indefinite, I believe the term "unreasonable" is the most unconstitutionally vague, particularly as Officer DeNett applied it to Whitehurst's conduct here.  *Cf. Tozer v. United States*, 52 F. 917, 919 (E.D. Mo. 1892) ("The criminality of an act cannot depend upon whether a jury may think it reasonable or unreasonable.  There must be some definiteness or certainty.").

More specifically, the Sullivan's Island disorderly conduct ordinance is a general ordinance, rather than one that only prohibits specific disturbances or those with an easily measurable impact.  *Cf. Grayned*, 408 U.S. at 112.  Because of the flexibility and breadth of the two subsections at issue, any application of the subsections is necessarily open to the widest conceivable discretion depending on a number of varying factors, the import of which are entirely subjective. *See United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 89 (1921) (holding unconstitutionally vague a statute prohibiting charging an "unjust or unreasonable rate" because any enforcement would require a wide-ranging, unpredictable inquiry).

---

[16] For example, using the dictionary definition of "boisterous," it is almost certain that after a University of South Carolina or Clemson University football game (particular one they win), the bars on Sullivan's Island also become "large-scale crime scenes"—yet I seriously doubt there are a slew of corresponding disorderly-conduct arrests.

As a result, the subsections at issue here permit law enforcement, judges, and juries to each exercise an extraordinary degree of discretion as to who gets charged *and* who gets convicted—for there is certainly no guarantee (in the ordinance or otherwise) that law enforcement and an eventual factfinder will agree as to what behavior is "unreasonable." *See City of Chicago v. Morales*, 527 U.S. 41, 71 (1999) (Breyer, J., concurring) ("The ordinance is unconstitutional, not because a policeman applied this discretion wisely or poorly in a particular case, but rather because the policeman enjoys too much discretion in *every* case."); *Grayned*, 408 U.S. at 114.[17] The inherently subjective nature of what a factfinder believes to be "unreasonable" at a particular point in time is so malleable a standard as to

---

[17] *Cf. N.J. Freedom Org. v. City of New Brunswick*, 7 F. Supp. 2d 499, 515 (D.N.J. 1997) (clarifying that allowing law enforcement officers the discretion to read various, unwritten limitations into an otherwise broadly-written statute enables them to selectively enforce the statute); *Langford v. City of Omaha*, 755 F. Supp. 1460, 1463 (D. Neb. 1989) ("The fact that the term ["unreasonable"] is likely to be interpreted differently among the various officials enforcing the ordinance is especially troublesome."); *Marks v. City of Anchorage*, 500 P.2d 644, 651 (1972) (expressing similar sentiments). The majority attempts to bolster its contention that "reasonable" provides a discernable, objective standard under the ordinance here because it is commonly used in other areas of the law, including (in the civil context) the discovery rule for statute of limitation purposes and (in the criminal context) the Fourth Amendment's prohibition against "unreasonable" searches and seizures. To me, there are stark differences in analyzing what is required under the "reasonableness" standard in the Fourth Amendment or statute of limitations contexts, therefore rendering the majority's extensive citation of such authority unpersuasive. As just a single example, in the Fourth Amendment context, determining whether a search or seizure is "reasonable" is the basis on which to exclude *evidence* of an otherwise-clearly-defined crime. In contrast, under the ordinance here, whether a noise is "reasonable" is the basis on which a person's actions are classified as a crime *at all*. *Cf. Carolina Youth Action Project*, 60 F.4th at 784 ("[W]e are unaware of any crime . . . requiring a multifactored balancing test to determine *whether a thing a person undisputedly did* is unlawful in the first place."); *Tozer*, 52 F. at 919 ("The criminality of an act cannot depend upon whether a jury may think it reasonable or unreasonable.").

allow a jury to impose liability on the basis of the jurors' tastes or views, or perhaps on the basis of their dislike of a particular expression. In a case such as this, a jury is unlikely to be neutral with respect to the content of the speech, posing a real danger of becoming an instrument for the suppression of vehement, caustic, and sometimes unpleasant expression. Such a risk is unacceptable . . . .

*Snyder*, 562 U.S. at 458 (cleaned up) (first quoting *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 55 (1988), then quoting *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 510 (1984)).[18]

It is with this possibility that I am particularly concerned here—that evaluating whether a noise is "unreasonable" under the ordinance will encourage (or even require) law enforcement and factfinders to evaluate the content of someone's speech.[19] The First Amendment generally prohibits the government from

---

[18] *See also Goguen*, 415 U.S. at 575, 578 ("Statutory language of such a standardless sweep allows policemen, prosecutors, and juries to pursue their personal predilections. Legislatures may not so abdicate their responsibilities for setting the standards of the criminal law. . . . Mr. Justice Black . . . [previously] voiced a concern, which we share, against entrusting lawmaking 'to the moment-to-moment judgment of the policeman on his beat.'" (cleaned up)); *Cantwell v. Connecticut*, 310 U.S. 296, 308 (1940); *Herndon v. Lowry*, 301 U.S. 242, 263 (1937) (explaining that a vague penal law "licenses the jury to create its own standard in each case").

[19] The "test of vagueness applies with particular force in review of laws dealing with speech." *Carolina Youth Action Project*, 60 F.4th at 781 (quoting *Hynes v. Mayor & Council of Oradell*, 425 U.S. 610, 620 (1976)); *see also Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982). More specifically, "Where a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the [vagueness] doctrine demands a greater degree of specificity than in other contexts." *Goguen*, 415 U.S. at 573; *Grayned*, 408 U.S. at 109 & n.5 ("[W]here a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms. Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." (cleaned up)).

proscribing speech due to its disapproval of the ideas expressed. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992). Indeed, "Content-based regulations are presumptively invalid." *Id.*; *Grayned*, 408 U.S. at 115 ("Clearly, government has no power to restrict [speech] because of its message."); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 511 (1969) ("Clearly, the prohibition of expression of one particular opinion, at least without evidence that it is necessary to avoid material and substantial interference with [normal activities], is not constitutionally permissible.").

While I agree with the majority that the ordinance is, on its face, content-neutral, Officer DeNett stated repeatedly (both on her body camera *and* at trial) that Whitehurst's arrest was based not merely on the volume of her words, *but on the content of her speech*.[20] This was an unquestionably unconstitutional interpretation and application of the word "unreasonable." *See R.A.V.*, 505 U.S. at 386 ("[W]e have upheld reasonable 'time, place, or manner' restrictions, but only if they are justified without reference to the content of the regulated speech. . . . *[T]he power to proscribe particular speech on the basis of a noncontent element (*e.g.*, noise) does not entail the power to proscribe the same speech on the basis of a content element*." (emphasis added) (cleaned up)); *Snyder*, 562 U.S. at 457 (reversing a jury verdict that was based on the jury's disapproval of the content of the defendant's speech).

Of equal importance, there is evidence in this case that the ordinance was "enforced in a discriminatory manner or with the aim of inhibiting unpopular speech." *Cf. Hoffman Ests.*, 455 U.S. at 503 (rejecting a vagueness challenge in part because there seemed to be a minimal danger of arbitrary enforcement of the ordinance in question given the lack of evidence tending to show law enforcement had applied the ordinance in a discriminatory manner or with the goal of stifling unpopular speech); *Colten*, 407 U.S. at 109–110 (noting that because the law at issue was applied in a content-neutral manner, there was nothing unconstitutional about how the allegedly

---

[20] Furthermore, because Whitehurst and Galbraith had already returned home by the time Officers DeNett and Mullen responded to Ghozlan's complaint, her epithets could not have possibly caused a contemporaneous breach of the peace that would have needed to be stopped immediately. *Cf. Feiner v. New York*, 340 U.S. 315, 317 (1951) ("The police officers made no effort to interfere with petitioner's speech, but were first concerned with the effect of the crowd on both pedestrian and vehicular traffic."); *Chaplinsky*, 315 U.S. at 574.

vague statute was applied by law enforcement). Here, Whitehurst presented affirmative evidence linking the decision to prosecute her with the content of her speech. Specifically, both Whitehurst *and* Galbraith yelled at Ghozlan, and yet only one of them—Whitehurst—was prosecuted.[21] *See supra* note 10. The existence of probable cause to arrest Whitehurst is not alone sufficient to show her arrest was proper and not motivated by the content of her speech. *Cf. Gonzalez v. Trevino*, 602 U.S. 653, 655 (2024) (per curiam) ("The existence of probable cause does not defeat a plaintiff's claim [for retaliatory arrest] if he produces 'objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been.'" (quoting *Nieves v. Bartlett*, 587 U.S. 391, 407 (2019))).

Accordingly, I would find the use of the term "unreasonable" in the Sullivan's Island disorderly conduct ordinance is unconstitutionally vague, not merely because of some hypothetical risk of arbitrary enforcement, but because of the actuality of arbitrary enforcement in this case—enforcement that was impermissibly based on the content of Whitehurst's speech.[22] *See, e.g.*, *Langford*, 755 F. Supp. at 1463

---

[21] The majority touts the fact that the ordinance is facially content-neutral but, in my judgment, fails to address the wealth of evidence in the record—most of which I have directly quoted above—demonstrating that the ordinance was applied to Whitehurst's conduct in a content-based manner. The majority does mention in passing that Officer DeNett considered Whitehurst's volume and the content of her speech in conjunction with one another in deciding to make an arrest. Nonetheless, the majority finds that because a disorderly conduct charge "could" have been brought based solely on Whitehurst's volume—despite the evidence revealing the content-based enforcement in this case—that is sufficient to uphold her criminal conviction. Respectfully, I believe that finding by the majority violates several constitutional tenets. *See, e.g.*, *R.A.V.*, 505 U.S. at 386 (noting that even though speech may be proscribable on the basis of its volume or some other content-neutral ground, the government may still not proscribe that same speech due to its content); *cf. Hoffman Ests.*, 455 U.S. at 498–99 (explaining courts cannot tolerate vagueness in statutes imposing criminal penalties).

[22] The majority relies on this Court's prior decision in *City of Beaufort v. Baker*, in which we upheld an ordinance prohibiting "loud and unseemly" noises. 315 S.C. at 148–49, 432 S.E.2d at 471–72. I find *Baker* distinguishable because, in that case, law enforcement officers specifically "ascertained that the [public's]

("Because the term 'unreasonable' is not a well-defined term, the enforcement of the ordinance in this instance may result in the violation of the speaker's fundamental [F]irst [A]mendment right of freedom of speech. A person disagreeing with the content of the speech is likely to conclude that the speech constitutes 'unreasonable' noise."; noting that "[f]ederal courts have held similar statutes or ordinances unconstitutional[ly vague]" (collecting cases)); *Marks*, 500 P.2d at 646 ("[T]he ordinance now before this court [criminalizing making "unreasonable noise"] raises the spectre of all of these abuses: it prohibits conduct which is protected by the United States and Alaska constitutions, it fails to give adequate notice of what conduct is prohibited, and it gives enforcement officials excessive discretion."); *cf. Kolender*, 461 U.S. at 358 (noting the second prong of the vagueness inquiry requiring concrete standards for statutory enforcement is the most important to satisfy).

---

complaints were based solely on the noise level" and *not* the content. *See id.* at 150, 432 S.E.2d at 472–73. It is indisputable here that Whitehurst's arrest was based at least in part on the content of her speech. *Baker* cannot rescue the majority's failure to consider the content-based enforcement of the ordinance that occurred here.

Likewise, the majority cites an Indiana Court of Appeals case for the proposition that "the clear majority trend has recognized that 'unreasonable noise' provisions which are construed only to prohibit *unprotected* speech are not unconstitutionally vague." *Price v. State*, 600 N.E.2d 103, 109 (Ind. Ct. App. 1992) (emphasis added), *aff'd in part, rev'd in part*, 622 N.E.2d 954 (Ind. 1993). There are several problems with the majority's reliance on this statement, of which we address only three. First, as we have explained above, Whitehurst's speech is *not* unprotected, and neither party contends otherwise. *See supra* note 11. Second, the ordinance here has *not* been "construed only to prohibit unprotected speech," including by this Court in this case. Finally, and most importantly, the Indiana Supreme Court's decision in the same case noted that "*any application of [the "unreasonable noise" statute] aimed at the **content** of expression is **impermissible**.*" *Price*, 622 N.E.2d at 967 (emphasis added), *rev'g* 600 N.E.2d 103. Accordingly, I do not believe the *Price* decision from the Indiana Court of Appeals is helpful to the majority here, for Whitehurst was unmistakably arrested and prosecuted due in part to the content of her speech.

## D.

As a final note, I highlight a fundamental principle of the void-for-vagueness doctrine, namely, while nearly every law entails some degree of ambiguity, the degree of vagueness tolerated in statutes imposing criminal punishments is significantly lower than those prescribing mere civil penalties. *Hoffman Ests.*, 455 U.S. at 498–99; *Carolina Youth Action Project*, 60 F.4th at 781. The reason for this distinction is obvious: the consequence of imprecision in a penal statute is qualitatively more severe. *Hoffman Ests.*, 455 U.S. at 499. To the extent there is any doubt as to the vagueness of the ordinance, I believe we are required to resolve it in favor of Whitehurst given the criminal nature of the statute. *See also supra* note 19.

## E.

While disorderly conduct statutes necessarily require on-the-spot assessments in the effort to maintain public order, the Sullivan's Island disorderly conduct ordinance takes that discretion too far, particularly because it permits and even encourages content-based enforcement. *Cf. Grayned*, 408 U.S. at 113 (finding a breach-of-the-peace ordinance passed constitutional muster because it did "*not* permit punishment for the expression of an unpopular point of view, and it contain[ed] *no* broad invitation to subjective or discriminatory enforcement" (emphasis added)). I would therefore find the ordinance unconstitutionally vague and reverse Whitehurst's conviction. *Cf. Saia*, 334 U.S. at 562 ("Annoyance at ideas can be cloaked in annoyance at sound. The power of censorship inherent in this type of ordinance reveals its vice.").

## IV.

Finally, I address the majority's contention that the ordinance's scienter requirement rescues the otherwise vague enactment from a finding of unconstitutionality.

As the majority correctly notes, "a scienter requirement *may* mitigate a law's vagueness, especially with respect to *the adequacy of notice* to the complainant that his conduct is proscribed." *Hoffman Ests.*, 455 U.S. at 499 (emphasis added). Recall, however, that there are two *independent* vagueness criteria that must be satisfied: fair notice *and* clear standards for evenhanded enforcement. *See Hill*, 530 U.S. at 732. A scienter requirement only mitigates vagueness under the first

criterion.[23]  As I have explained at length, the Sullivan's Island disorderly conduct ordinance fails the *second* criterion of the vagueness inquiry.  A scienter requirement does nothing to mitigate the unfettered discretion afforded to law enforcement that may result in arbitrary applications of the law.  *Cf. Goguen*, 415 U.S. at 579–80 (rejecting an argument that a scienter requirement saved the statute at issue from being found unconstitutionally vague in part because the scienter requirement did not clarify the scope of law enforcement's discretion to interpret a critical term of the statute); *Kramer v. Price*, 712 F.2d 174, 178 (5th Cir. 1983) ("Specifying an intent element does not save [the statute] from vagueness because the conduct which must be motivated by intent, as well as the standard by which that conduct is to be assessed, remain vague.").  In my judgment, when the second vagueness criterion is properly considered, the unconstitutionality of the Sullivan's Island disorderly conduct ordinance is plain.

I further note the ordinance's scienter requirement is written in the disjunctive, triggered either if the person acts "with the purpose of causing public danger, alarm, disorder, or nuisance, *or* if his or her conduct is likely to cause public danger, alarm, disorder, or nuisance."  (Emphasis added).  As a result, Sullivan's Island need never show purpose or some other culpable state of mind so long as it proves the conduct was "likely" to be received poorly by the surrounding public (which, again, encourages enforcement based on the content of the speech).  *Carolina Youth Action Project*, 60 F.4th at 786 (noting a similar problem in South Carolina's disorderly conduct statute, and finding that the scienter requirement therefore did not mitigate the law's vagueness).[24]  The majority fails to analyze the impact of the "is likely to"

---

[23] *See Screws v. United States*, 325 U.S. 91, 102, 103 (1945) (plurality opinion) ("The requirement that the act must be willful or purposeful may not render certain, for all purposes, a statutory definition of the crime which is in some respects uncertain.  But it does relieve the statute of the objection that it punishes without warning an offense of which the accused was unaware.").

[24] *Cf. Counterman*, 600 U.S. at 76 (stating, in discussing the scienter level necessary to prosecute someone for true threats and other unprotected speech: "Like threats, incitement inheres in particular words used in particular contexts: Its harm can arise even when a clueless speaker fails to grasp his expression's nature and consequence.  But still, the First Amendment precludes punishment, whether civil or criminal, unless the speaker's words were 'intended' (*not just likely*) to produce imminent disorder." (emphasis added)).

portion of the scienter requirement.[25]  *See Hoffman Ests.*, 455 U.S. at 498–99 (explaining the degree of vagueness tolerated in penal statutes is far lower than that tolerated in civil statutes).

## V.

I end where I started: I do not condone Whitehurst's statements, which were both ignorant and offensive.  Nonetheless, my personal distaste for her statements can have no place in the appropriate legal analysis.  *Cf. Edwards v. South Carolina*, 372 U.S. 229, 237–38 (1963) ("Speech is often provocative and challenging.  It may strike at prejudices and preconceptions and have profound unsettling effects . . . . [Nonetheless,] freedom of speech is protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.  There is no room under our Constitution for a more restrictive view." (cleaned up) (quoting *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949))).

In my view, the Sullivan's Island disorderly conduct ordinance is void for vagueness given the well-nigh unlimited discretion it affords to law enforcement to pick and choose between otherwise similarly situated offenders based solely on the content of their speech.  Indeed, law enforcement officers explicitly stated they did so in this case.  I do not believe the Constitution permits such a result.  I therefore dissent insofar as the majority rejects Whitehurst's vagueness challenge.

---

[25] In fact, the majority attempts to shore up its analysis by citing to *Duhe v. City of Little Rock*, 902 F.3d 858 (8th Cir. 2018).  That case, however, is unquestionably distinguishable given that the law at issue there involved a scienter requirement of either purpose or recklessness—both culpable states of mind.